CORNELIUS v. STATE *ex rel.* CRUCE, *Gov., et al.*

No. 5917.  Opinion Filed May 12, 1914.

**TAXATION—Real Estate Mortgage—Property of the State—Exempt from Taxation.** A mortgage conveying to the Commissioners of the Land Office, for and on behalf of the state, certain land to secure a loan of $1,000 of the permanent school funds, is the property of the state and, as such, by virtue of Constitution, art. 10, sec. 6, is exempt from the tax thereon sought to be imposed by act approved July 12, 1913, which is not a revenue bill within the meaning of Constitution, art. 5, sec. 33.

(Syllabus by the Court.)

*Error from District Court Oklahoma County;* ·
*W. R. Taylor, Judge.*

Action by the State of Oklahoma on the relation of Lee Cruce, Governor, and others, as Commissioners of the Land Office, against M. Cornelius, Register of Deeds. Judgment for plaintiffs, and defendant brings error. Affirmed.

*D. K. Pope* and *A. L. Hilprit,* for plaintiff in error.

*J. H. Chambers* and *R. E. Wood,* for defendants in error.

TURNER, J. On March 29, 1913, the Commissioners of the Land Office, pursuant to the Constitution, art. 6, sec. 32, and Rev. Laws 1910, sec. 7652, loaned to J. H. Morton and wife $1,000 of the permanent school funds, and, as security therefor, took back from them a mortgage conveying to said commissioners for and on behalf of the state, the northwest quarter (N. W. ¼) of section fourteen (14), township fourteen (14) north, range four (4) west of the Indian meridian, containing one hundred sixty (160) acres, payable in five years. Later they presented said mortgage to M. Cornelius, register of deeds of Oklahoma county, for recording, and they tendered him $1.35 as his fee for so doing, which he refused to accept, and further refused to record said mortgage, for the reason that nowhere endorsed thereupon, or accompanying the same, was there a receipt of or from the county treasurer of Oklahoma county, or other evidence showing payment of $5, the tax sought to be imposed thereon by act approved July 12, 1913, Sess. Laws 1913, c. 246. The question before us is whether mandamus will lie to compel him to record the mortgage. As the act was passed during the last five days of the Fourth Legislature, it is conceded by all concerned that mandamus will not lie if said act is a revenue bill within the contemplation of the Constitution, art. 5, sec. 33. Said act is entitled:

"An act providing for exemption from *ad valorem* tax on mortgages of real estate and the indebtedness thereby secured, the payment of the registration tax when filing mortgages for record, and providing for a procedure for collecting such special tax (*sic*) for other purposes."

Section 1 defines a "real estate mortgage," which includes the one in question.

Section 2 provides:

"All mortgages of real property situated within the state which are taxed by this article, and the debts and obligations which they secure, together with the paper writings evincing the same, shall be exempt from *ad valorem* and all other taxation by the state, counties, towns, villages, school district, and other local subdivisions of the state, except this act shall not affect in any manner the collection of any income tax payable in whole or in part from the interest received from such mortgage indebtedness. The exemption conferred by this exemption shall not be construed to impair or in any manner affect the purchaser of real estate which may be sold for nonpayment of taxes levied by any local authority."

Section 3 then provides:

"No mortgage of real property situated within this state shall be exempt, and no person or corporation owing any debt or obligation secured by mortgage on real property situated within this state shall be exempt from the tax imposed by this article by reason of anything contained in any other statute, or by reason of nonresidence within this state, or for any other cause."

That part of section 4 applicable, if at all, to this mortgage then provides for a tax of 50 cents on each $100 secured thereby. It is unnecessary to quote further from the act. It is apparent that this act is not a revenue bill within the contemplation of said section of the Constitution, for the reason that the revenue to be derived therefrom is merely an incident to the main object of the bill, and that its general purpose was not that of raising revenue.

In *Twin City Nat. Bank of New Brighton v. Nebeker* (D. C.) 3 App. Cases 190, in the body of the opinion it is said:

"While the primary object of all taxation is raising of revenue for the support of the government, and all bills for that general purpose are bills for raising revenue in the sense of the Constitution, and therefore must originate in the House of Representatives, it does not necessarily follow that every bill for some other legitimate and well-defined general purpose becomes a revenue bill in the same sense, because, as an incident to the main object, it may contain a provision for the payment of certain dues, license fees, or special taxes."

In the syllabus the court says:

"The fact that that portion of the national bank act, June 3, 1864, sec. 41 (13 St. at L. 111) imposing a semiannual tax upon circulating notes of national banks organized under the act, had its origin in the senate by amendment to the bill as originally introduced in the house, does not invalidate it, as the amendment was not an independent measure, and did not convert it into a bill for raising revenue in the sense of the Constitution, art. 1, sec. 7, providing that bills for raising revenue must originate in the House of Representatives."

In *Mumford v. Sewell,* 11 Ore. 67, 4 Pac. 585, the act assailed was of October 26, 1882, and entitled:

"An act to define the terms 'land' and 'real property' for the purpose of taxation, and to provide where the same shall be assessed and taxed, and to declare what instrument whereby land or real property is made security for the payment of debt shall be void, and to repeal sections 2 and 7 of c. 50 of Misc. Laws of Oregon."

Among other things the act provided that mortgages on real estate, should, for the purpose of taxation, be deemed to be real property, and should be assessed and taxed to the owner thereof in the county where recorded. The act made it the duty of the county clerk, where requested by the owner of a mortgage recorded in his office, to record in the margin of the record of the mortgage all payments made on the indebtedness which such mortgage was given to secure. Pursuant to the act, respondent requested the appellant, the county clerk of a certain county in the state, to record in the margin of a certain mortgage recorded in his office, certain payments made thereon, which he refused to do, whereupon respondent instituted certain proceedings which resulted in a peremptory writ of mandamus requiring him so to do. On appeal the clerk urged among other defenses that the bill was unconstitutional, and on this point the court said:

"Some of us have considerable doubt whether the bill is not properly a bill for raising revenue, and therefore in violation of section 18 of art. 4 of the state Constitution, because it originated in the senate. But it is not sufficiently clear that a law which merely declares that certain property theretofore exempt from taxation, shall thereafter be subject to taxation, is strictly a law for raising revenue. We do not feel warranted,

therefore, as at present advised, in declaring the law unconstitutional on this ground."

—and affirmed the judgment. This same act was again brought in question, and the same point raised in *Dundee Mortgage Trust Inv. Co. v. Parrish et al.,* 11 Sawy. 92. There Judge Deady, after quoting from *Mumford v. Sewell, supra,* as we have done, put the question left open in this case beyond doubt. He said:

"But I am clear that this is not a bill for raising revenue. True, it provides that when revenue is to be raised mortgages shall contribute thereto as land. But it does not authorize or provide for levying any tax or raising a cent of revenue. A bill for raising revenue or a 'money bill,' as it was technically called at common law, is a bill levying a tax on all or some of the person's, property, or business of the country for a public purpose; and the assessment or listing and valuation of the polls or property preliminary thereto, and all laws regulating the same, are merely measures to secure what may be deemed a just or expedient basis for the levying of a tax or raising a revenue thereon. The Constitution of the United States (section 7 of art. 1) contains a provision on this subject similar to the one of the state Constitution. It reads: 'All bills for raising revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments, as on other bills.' In speaking of this clause, Story, in his commentaries on the Constitution (section 880), says: 'And, indeed, the history of the origin of power, already suggested, abundantly proves that it has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue.' "

See, also, *Anderson v. Ritterbusch, Co. Treas.,* 22 Okla. 761.

We are therefore of the opinion that there is no merit in the contention that the act is a revenue bill within the contemplation of said section of the Constitution.

The next question for us to determine is whether this mortgage, securing as it does a loan of moneys from the permanent school fund, is exempt from the tax imposed by the act. Stripped to the point, Constitution, art. 10, sec. 6, provides: "All * * * property used exclusively for schools, * * * and all property of this state; * * * shall be exempt from taxation."

There can be no doubt that this money was loaned from a fund, the property of the state. Enabling Act, sec. 7, provides that upon the admission of the state into the Union sections 16 and 36 in every township in Oklahoma Territory and all indemnity lands theretofore selected in lieu thereof are "hereby granted to the state for the use and benefit of the common schools."

Section 9 provides that the proceeds of these lands, if sold, shall "constitute a permanent school fund, the interest of which only shall be expended in the support of schools."

Section 7 of said act also appropriated to the state out of the treasury of the United States $5,000,000 "for the use and benefit of the common schools of the state" in lieu of certain lands in the Indian Territory.. It also provides:

" * * * That said sum shall be paid to said state for the use and benefit of its public schools. Said sum to be invested by said state, in trust, for the use and benefit of said schools, and the interest therefrom shall be used exclusively for the support and maintenance of said schools. * * * "

By Constitution, art. 11, sec. 1, the state accepted "all grants of lands and donations of money made by the United States under the provisions of the Enabling Act, for the uses and purposes, and upon the conditions, and under the limitations for which the same are granted or donated;" and pledged the faith of the state to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated." It will thus be seen that the state is the owner of such lands and moneys by virtue of grants and donations which implies that the title thereto is in the state. *Betts v. Com. of the Land Office,* 27 Okla. 67, *State ex rel. Dunlop v. Cruce et al., Com'rs Land Office,* 31 Okla. 486. The next section provides:

"All proceeds of the sale of public lands that have heretofore been or may be hereafter given by the United States for the use and benefit of the common schools of this state, all such per centum as may be granted by the United States on the sales of public lands, the sum of five million dollars appropriated to the state for the use and benefit of the common .schools in lieu of section sixteen and thirty-six, and other lands of the Indian Ter-

ritory, the proceeds of all property that shall fall to the state by escheat, the proceeds of all gifts or donations to the state for common schools not otherwise appropriated by the terms of the gifts, and such other appropriations, gifts, or donations as shall be made by the Legislature for the benefit of the common schools, shall constitute the permanent school fund, the income from which shall be used for the maintenance of the common schools in the state. The principal shall be deemed a trust fund held by the state, and shall forever remain inviolate. It may be increased, but shall never be diminished. The state shall reimburse said permanent school fund for all losses thereof which may in any manner occur, and no portion of said fund shall be diverted for any other use or purpose."

And section 6:

"The permanent common school and other educational funds shall be invested in first mortgages upon good and improved farm-lands within the state. * * * "

Nothing further is required to show that the $1,000 evidenced by the mortgage in question was loaned from the property of the state. Not only that, but the mortgage itself, which evidences the loan, and which is sought by the act to be taxed, is also the property of the state, and as such is within the contemplation of section 33, art. 5 of the Constitution, *supra,* and exempt from taxation.

We say that mortgage is the property of the state and it is as much so as a promissory note would be "my property, which is made payable to me and evidenced a loan made out of funds belonging to me." The proposition is so simple as not to require authority to support it.

It follows that the judgment of the trial court is affirmed, and the suit dismissed.

All the Justices concur.