Dear Oklahoma House of Representatives Cotner
¶ 0 This office has received your request asking for an official Opinion addressing, in effect, the following question:
Do the procedural requirements of Article V, § 33 of theOklahoma Constitution, which require, among other things, that arevenue bill shall not become effective, until a majority of thepeople voting in an election approves such measure, apply toHouse Bill 1387, First Session of the 45th Legislature, whichmakes various amendments to the Oklahoma Waste Tire RecyclingAct?
 I. House Bill 1387's Amendments of the Oklahoma Waste Tire Recycling Act
¶ 1 The bill you inquired about, House Bill 1387 of the First Session of the 45th Legislature, makes various amendments to the Oklahoma Waste Tire Recycling Act (the "Act"), 27A O.S. 1991 andSupp. 1995, § 2-11-401 through § 2-11-413. Among other things, that Act provides for the disposal of waste tires by "waste tire facilities," "by shredding or other technology, except baling, which alters the form of the tires, for the purpose of facilitating the future extraction of useful materials for recycling, reuse or energy recovery." 27A O.S.Supp. 1995, §2-11-402[27A-2-11-402].
¶ 2 To encourage the proper recycling of waste tires, the Act, under specified conditions, provides for compensation of waste tire facilities that meet the Act's requirements. 27A O.S.Supp.1995, § 2-11-406[27A-2-11-406]. Such compensation comes from the Waste Tire Recycling Indemnity Fund which is funded through the collection of a waste tire and recycling fee. 27A O.S.Supp. 1995, §2-11-403[27A-2-11-403] and § 2-11-405.
¶ 3 House Bill 1387 of the First Session of the 45th Legislature, made various amendments to the Oklahoma Waste Tire Recycling Act. Among other things, the amendments make it unlawful to dispose of waste tires in various ways, H.B. 1387, § 1;[1] and define various terms, id. § 2.[2] The amendments also provide an application procedure for those seeking exemption certificate under the Act, id. § 4;[3]
amend the assessments imposed under the Act, id. § 3;[4]
establish procedures for compensation under the Act, id. § 7;[5] and provide for the evaluation of each waste tire facility by the Department of Environmental Quality, every three years, id. § 8(C).[6]
¶ 4 To determine whether House Bill 1387 of the First Session of the 45th Legislature is a revenue raising bill under ArticleV, § 33 of the Oklahoma Constitution, we first look to the genesis and meaning of that constitutional provision.
 II. Genesis and Meaning of Article V, § 33 of the Oklahoma Constitution
¶ 5 In March of 1992, the people of the State of Oklahoma went to the polls and adopted State Question 640, which amended the provisions of Section 33 of Article V of the Oklahoma Constitution. Prior to the Amendment, Section 33 read:
 All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills. No revenue bill shall be passed during the five last days of the session.
(Emphasis added.)
¶ 6 As amended by the passage of State Question 640, Article V, § 33 of the Oklahoma Constitution now reads:
 A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.
 B. No revenue bill shall be passed during the five last days of the session.
 C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.
 D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.
Okla. Const. art. V, § 33 (emphasis added).
¶ 7 The drafters of State Question No. 640 did not require that all bills affecting tax liability or all bills resulting in additional income to the State be subject to the procedural requirements of Article V, § 33. Rather, the drafters of State Question No. 640 attached new procedural requirements to "bills for raising revenue," also called "revenue bills." In choosing to have these procedural requirements apply only to "bills for raising revenue" or "revenue bills," terms which the Oklahoma Supreme Court has construed on many occasions, those proposing and approving State Question No. 640 were deemed to be knowledgeable of the construction placed on those interchangeable terms (the Oklahoma Supreme Court held the terms "bills for raising revenue" and "revenue bills" are interchangeable inAnderson v. Ritterbusch, 98 P. 1002, 1005 (Okla. 1908)), and to have adopted the Court's construction of those terms.
¶ 8 The Oklahoma Supreme Court, in Wimberly v. Deacon,144 P.2d 447, 450 (Okla. 1944), recognized the settled principles of law, that (1) the framers of statutes and constitutional revisions "must always be presumed" to be "familiar with settled rules of statutory and constitutional construction," (2) the framers have a "right to act on such rules," and (3) the framers can "expect the courts to follow them in construing and enforcing" statutes and constitutional provisions.
¶ 9 One of the principal rules of constitutional construction is that where the language of the constitutional provision comes from a constitutional provision that has already been construed, the framers of the provision are not only presumed to be familiar with the construction placed upon the provision by the courts, but are also presumed to have adopted the previous construction. The Oklahoma Supreme Court, in State v. Board of CountyCommissioners of Creek County, 107 P.2d 542, 549 (Okla. 1940), expressed this primary principle of constitutional construction as follows:
 The framers of our Constitution are presumed to have been familiar with these decisions from our neighbor states and to have them in mind in inserting Sec. 53 of Art. 5 in our Constitution.
¶ 10 Similarly, in Wimberly, the Oklahoma Supreme Court, in more specific terms, stated this principle of law and the reason for it:
 [W]hen provisions have been adopted into the constitution of a state which are identical with or similar to those of other states, it will be presumed that the framers of the constitution were conversant with, and designed to adopt, the construction previously placed on such provision. . . . The reason for this rule is that, if it was intended to exclude the previous construction, the legal presumption is that the terms of the provision would be so changed as to effect that intent.
Wimberly, 144 P.2d at 450 (emphasis added) (citations omitted).
¶ 11 Under these principles of law, the drafters of State Question No. 640 in amending the provisions of Section 33 of Article V of the Oklahoma Constitution, were not only presumed to be familiar with the construction the Oklahoma courts had placed upon the interchangeable terms "bills for raising revenue" and "revenue bills," but were also deemed to have adopted the construction the courts had placed upon those terms.
¶ 12 The interchangeable terms "bills for raising revenue" and "revenue bills" are terms of art with a specific meaning under Oklahoma law. Under Oklahoma law, a bill does not constitute a "revenue bill" unless (1) the principal object of the bill is to raise revenues; and (2) the bill levies a tax in the strict sense of the word. It is equally clear, under Oklahoma law, that the term "revenue bill" does not cover laws under which revenue would incidentally be raised.
¶ 13 The first Oklahoma case to construe "revenue bill" wasAnderson v. Ritterbusch, 98 P. 1002 (Okla. 1908). In that case, the Oklahoma Supreme Court held that the bill being challenged was not a revenue raising bill. In doing so, the Court looked at various federal and State cases which had examined the issue under their various jurisdictions' constitutional provisions. Quoting from United States v. Mayo, 26 F. Cas. 1230 (C.C. Mass. 1853) (No. 15,754), the Anderson court described a "revenue bill" as follows:
 The true meaning of revenue laws in this clause is such laws as are made for the direct and avowed purpose for creating and securing revenue or public funds for the service of government. No laws, whose collateral or indirect operation might possibly conduce to the public or fiscal wealth, are within the scope of this provision.
¶ 14 Since its decision in Anderson v. Ritterbusch, the Oklahoma Supreme Court has employed a two-pronged test to determine whether a bill is a "revenue bill," subject to the procedural provisions of Section 33 of Article V. The most direct articulation of that two-pronged test was in Leveridge v.Oklahoma Tax Commission, 294 P.2d 809 (Okla. 1956), where the Court held in its first Syllabus that:
 "Revenue Bills" are those laws whose principal object is the raising of revenue and which levy taxes in the strict sense of the word, and said phrase does not cover laws under which revenue may incidently arise.
(Emphasis added.)
¶ 15 This definition of "revenue bill" was reaffirmed by the Oklahoma Supreme Court in Board of County Commissioners v.Oklahoma Public Employees Retirement System, 405 P.2d 68, 69
(Okla. 1965), where the Supreme Court quoted the definition fromLeveridge and held, in its third Syllabus, that:
 An Act of the Legislature in which revenue may incidently arise, but whose principal object is not the raising of such revenue, does not come within the provisions of Article 5, Section 33 of the Oklahoma Constitution requiring all revenue measures to originate in the House of Representatives.
¶ 16 It is apparent from a reading of these cases that in order for a bill to constitute a "revenue bill," two elements must be present:
 1. The bill's principal object must be the raising of revenue, and
 2. The bill must, in the strict sense of the word, levy a tax.
¶ 17 The Oklahoma Supreme Court's construction of "revenue bill" has made it clear that the mere fact a bill may incidentally increase revenue does not make it a "revenue bill." For example, in a series of controversies involving Pure Oil Company and the Oklahoma Tax Commission, the Court held that a statute which extended an existing tax to a new class of taxpayers did not constitute a "revenue bill" under Article V, § 33. The controversy between Pure Oil Company and the Tax Commission involved two cases. In the first case, Pure Oil Co.v. Cornish, 52 P.2d 832 (Okla. 1935), Pure Oil Company argued that the tax laws which impose taxes on various motor carriers engaged in "commercial" enterprises did not apply to Pure Oil Company because it was engaged in "industrial" enterprises. The Supreme Court agreed.
¶ 18 Shortly after the Court's decision, the Legislature responded by amending the law to impose the tax on "industrial" as well as "commercial" motor carriers. This time, in attacking the statute, Pure Oil Company in Pure Oil Co. v. Oklahoma TaxCommission, 66 P.2d 1097 (Okla. 1937), argued, among other things, that the act was a revenue measure adopted in violation of Article V, § 33. The Supreme Court rejected this argument, finding that because the principal object of the bill was not to raise revenue, it was not a revenue-raising bill. In rejecting Pure Oil Company's arguments, the Supreme Court stated in its third Syllabus that:
 The real purpose of [the challenged law] being to regulate the use of public highways, provision therein requiring payment of tax or license fee for use of highway in furtherance of industrial pursuits, is only incidental to [its] real purpose, and the act is not a revenue raising measure such as to render it void under section 33, art. 5 of the Constitution of the state of Oklahoma[.]
Id.
¶ 19 These cases, and other similar cases, make it clear that a bill which has as its primary purpose, something other than raising revenue, is not a "revenue bill" under Article V, § 33 of the Oklahoma Constitution.[7]
 III. Principal Objective of House Bill 1387 Is Protection of the Environment By Facilitating Reduction of Waste Tires Through Recycling
¶ 20 The bill you inquire about, House Bill 1387, First Session, 45th Legislature, is, as indicated in the first line of its title, "[a]n Act relating to environment and natural resources." The bill makes various changes and amendments to the Oklahoma Waste Tire Recycling Act, 27A O.S. 1991 and Supp. 1995,§ 2-11-401 through § 2-11-413. As noted above, the Act provides, among other things, for the proper disposal of waste tires by a "waste tire facility." By definition, these facilities are places which are licensed as solid waste disposal sites in accordance with the Oklahoma Solid Waste Management Act. At these sites, waste tires are collected or deposited for processing "by shredding or other technology, except baling, which alters the form of the tires, for the purpose of facilitating the future extraction of useful materials for recycling, reuse for energy recovery." 27A O.S.Supp. 1995, § 2-11-402[27A-2-11-402](4).
¶ 21 The Oklahoma Waste Tire Recycling Act is part 4 of Article XI of Title 27A, which deals with Waste Reduction and Recycling. A reading of the Act makes it clear that the Act's principal purpose is the protection of the environment by facilitating the reduction of waste tires through proper recycling. The assessment and collection of waste recycling fees is incidental to the Act's purpose. Accordingly, under the case law discussed above, the bill enacting the provisions of the Act was not a revenue bill. Under the same analysis neither is House Bill 1387, which has the same primary purpose.
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The provisions of Article V, § 33 of the OklahomaConstitution, which impose various procedural requirements forthe proper passage of a "revenue bill," also referred to as a"bill for raising revenue," only apply to bills which (1) have astheir principal object the raising of revenue, and (2) levy a taxin the strict sense of the word.
 2. The procedural requirements imposed on "revenue bills" or"bills for raising revenue," by Article V, § 33 of the OklahomaConstitution do not apply to bills which incidently raiserevenue.
 3. The Oklahoma Waste Tire Recycling Act, 27A O.S. 1991 andSupp. 1995, § 2-11-401 through § 2-11-413, has as its principal objective the protection of the environment by facilitating the reduction of waste tires through proper recycling.
4. The provisions within the Oklahoma Waste Tire Recycling Actwhich provide for the imposition and collection of a waste tirerecycling fee, 27A O.S.Supp. 1995, § 2-11-403, do not renderthe Oklahoma Waste Tire Recycling Act a "revenue bill" becausesuch fees are merely incidental to the Act's principal purpose,the protection of the environment by facilitating the reductionof waste tires and the proper recycling of waste tires.
 5. House Bill 1387, 45th Legislature, First Regular Session,1995 Okla. Sess. Laws ch. 191, which makes various amendments tothe Oklahoma Waste Tire Recycling Act, 27A O.S. 1991 and Supp.1995, § 2-11-401 through § 2-11-413, has as its principalpurpose the protection of the environment by facilitating thereduction of waste tires and the proper recycling of waste tires,and accordingly, is not a "revenue bill" as that term is used inArticle V, § 33 of the Oklahoma Constitution.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] 27A O.S.Supp. 1995, § 2-11-413[27A-2-11-413].
[2] 27A O.S.Supp. 1995, § 2-11-402[27A-2-11-402].
[3] 27A O.S.Supp. 1995, § 2-11-403.1[27A-2-11-403.1].
[4] 27A O.S.Supp. 1995, § 2-11-403[27A-2-11-403].
[5] 27A O.S.Supp. 1995, § 2-11-407[27A-2-11-407].
[6] 27A O.S.Supp. 1995, § 2-11-408[27A-2-11-408](C).
[7] In the case of Cornelius v. State, 140 P. 1187 (Okla. 1914), the Oklahoma Supreme Court was called upon to determine whether a 1913 enactment, 1913 Okla. Sess. Laws ch. 246, was a "revenue bill." That bill exempted mortgages on real estate and indebtedness incurred thereby from ad valorem taxes, but made such instruments subject to the payment of a registration tax, which was paid when a mortgage was filed. The new mortgage registration fee, which provided for a tax of fifty cents on each hundred dollars secured by the mortgage, was found not to be a "revenue bill," "for the reason that the revenue to be derived therefrom is merely an incident to the main object of the bill, and that its general purpose was not that of raising revenue."Cornelius, 140 P. at 1188. In so ruling, the Court quoted with approval from Twin City National Bank of New Brighton v.Nebeker, 3 App. D.C. 190 (D.C. 1894), in which the Court stated:
 While the primary object of all taxation is the raising of revenue for the support of the government, and all bills for that general purpose are `bills for raising revenue,' in the sense of the Constitution, and therefore must originate in the House of Representatives, it does not necessarily follow that every bill for some other legitimate and well-defined general purpose becomes a revenue bill in the same sense, because, as an incident to the main object, it may contain a provision for the payment of certain dues, license fees, or special taxes.
Cornelius, 140 P. at 1188 (emphasis added).
In another case, decided that same year, Ex parte Ambler,148 P. 1061 (Okla. 1914), petitioner Ambler brought a habeas corpus
action attacking his conviction under provisions of the Medical Practices Act. The petitioner was convicted of violating the section of the Act which prohibited those without a medical license from peddling medicine and medical appliances. The petitioner argued that the Medical Practices Act was a "revenue bill" because it required the payment of a fee before one could practice medicine. The Court held that the Medical Practices Act was not a revenue raising bill within the meaning of the Constitution. So holding the Court stated, "[r]evenue laws, in the contemplation of this section of the Constitution, are those only whose principal purpose is the raising of revenue, and not those under which revenue may incidently be arise." Ambler,148 P. at 1067.
In the case of In re Lee, 168 P. 53, 54 (Okla. 1917), an act providing that "a docket fee of $25 shall be taxed, collected, and recoverable as other costs in each case filed in the Supreme Court," and which further required an advance payment of $40, was challenged as, among other things, a revenue raising bill. Holding that the challenged provision was not a "revenue bill," the Supreme Court stated that "it prescribes a fee to the public for services rendered by their officers, and is not exacted for revenue, but as compensation. An Act prescribing such fees is not a revenue measure within the meaning of the Constitution." Lee,168 P. at 57.
Shortly after the enactment of a 1923 act, which was passed for the purposes of regulating and controlling motor vehicles operating as common carriers for hire over the public highways, the act was challenged by an individual charged with violating its provisions in Ex parte Tindall, 229 P. 125 (Okla. 1924). One of the primary challenges brought by Mr. Tindall was his claim that the act was a "revenue bill" passed in violation of the provisions of Article V, § 33, because of the payment of taxes and license fees required in the act. Rejecting this challenge, the Supreme Court stated in its fifteenth Syllabus:
 The real purpose of the act being to regulate the use of public highways by transportation companies, a provision in such act requiring payment of a tax or license fee for the privilege of operating such business, such fee or tax being merely incidental to the enforcement of the real purpose of the act, does not render the act void under section 33, art. 5 of the Constitution, which requires all revenue bills to originate in the House of Representatives.
Tindall, 229 P. at 127.