OSCN Found Document:OKLAHOMA AUTOMOBILE DEALERS ASSOC. v. STATE ex rel. OKLAHOMA TAX COMM.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 OKLAHOMA AUTOMOBILE DEALERS ASSOC. v. STATE ex rel. OKLAHOMA TAX COMM.
2017 OK 64
Case Number: 116143
Decided: 08/31/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 64, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

OKLAHOMA AUTOMOBILE DEALERS ASSOCIATION, an Oklahoma corporation, L AND J ACQUISITIONS, LLC d/b/a BATTISON HONDA, and CAITLIN CANNON, an individual, Petitioners,
v.
STATE OF OKLAHOMA, ex rel. OKLAHOMA TAX COMMISSION, Respondent.

APPLICATION TO ASSUME ORIGINAL JURISDICTION 
AND PETITION FOR WRIT OF PROHIBITION 

¶0 Petitioners, who are a not-for-profit trade association of automobile dealers, an automobile dealer, and a prospective consumer in Oklahoma, challenged House Bill 2433, alleging that it is a revenue bill enacted outside of the procedure mandated in Article V, Section 33 of the Oklahoma Constitution. The parties agree that the passage of HB 2433 did not comply with Article V, Section 33; so the case turns on whether HB 2433 is a "revenue bill" to which Article V, Section 33 applies. Applying the test we have utilized since 1908, we conclude that, HB 2433 "does not levy a tax in the strict sense" because it removes a tax exemption from an already levied tax rather than levying any new tax. As such, HB 2433 is not a revenue bill subject to Article V, Section 33's requirements.

ORIGINAL JURISDICTION ASSUMED. 
PETITION FOR WRIT OF PROHIBITION DENIED.

Clyde A. Muchmore, Melanie Wilson Rughani, and Paige A. Masters, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Petitioners.

Mithun S. Mansinghani, Abby Dillsaver, and Ethan Shaner, Office of the Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Respondent.

Wyrick, J.:

¶1 This is the second of several cases challenging various measures enacted by the Legislature this past session in response to the State's budget crisis. In the first of those cases we unanimously held that a measure imposing a new $1.50-per-pack assessment on cigarettes was a "revenue bill" subject to Article V, Section 33's requirements that revenue bills (1) originate in the House of Representatives, (2) be enacted prior to the final five days of the legislative session, and (3) be approved by either the people or by a three-fourths majority of each legislative chamber.[1] This was so because the cigarette measure fit squarely within our century-old test for "revenue bills," in that it both had the primary purpose of raising revenue for the support of state government and it levied a new tax in the strict sense of the word.[2]

¶2 This case involves House Bill 2433,[3] which was also enacted during the final five days of the session and did not receive three-fourths support in either legislative chamber.[4] Like the first case, this case involves an Article V, Section 33 challenge, but the similarities end there because this case presents the much different question of whether a measure revoking an exemption from an already levied tax is a "revenue bill" subject to Article V, Section 33's requirements. Applying the two-part test we have applied for the last century, we conclude that HB 2433 is not a "revenue bill" because, despite its revenue-raising purpose, it does not levy a tax in the strict sense of the word.

¶3 We are compelled to reach this result for three primary reasons. First, our cases have long held that measures making "certain property . . . theretofore exempt from taxation . . . subject to taxation" are not "revenue bills" because removal of an exemption from an already levied tax is different from levying a tax in the first instance.[5] Second, while that rule may seem superficially inconsistent with Article V, Section 33's taxpayer protections, it is actually deeply rooted in our Constitution's related policies that disfavor special exemptions from taxation and promote uniformity of taxation-policies that are also designed to protect the taxpayers. And third, because we have never before in our history held that a measure revoking a tax exemption is a "revenue bill," and because we have explicitly held that such measures are not "revenue bills," to hold otherwise would require us to break new ground and overrule well-established precedents. To do so would be to deprive the Legislature and the people of the legal predictability, uniformity, and clarity that it is our obligation to provide. Accordingly, we must deny Petitioners the relief they seek.

I.

¶4 To properly apply our Article V, Section 33 test, we must first determine the operation and effect of HB 2433.

¶5 In 1933, the Legislature levied a sales tax on all tangible personal property-including automobiles-and that sales tax has remained part of our tax code ever since.[6] In 1935, however, the Legislature added an exemption for automobile sales in the sales-tax provisions, so that automobiles were subject to only an automobile excise tax from that point forward.[7] HB 2433 revokes part of that sales tax exemption so that sales of automobiles are once again subject to the sales tax, but only a 1.25% sales tax.[8] Sales of automobiles remain exempt from the remainder of the sales tax levy. HB 2433 does not, however, levy any new sales or excise tax, as the text of the measure and related provisions demonstrate.

¶6 For example, the sales tax levy can be found in 68 O.S. § 1354, imposing a tax upon "the gross receipts or gross proceeds of each sale" of tangible personal property and other specifically enumerated items.[9] The last amendment increasing the sales tax levy was in 1989, when the rate was raised to 4.5%.[10] Nothing in HB 2433 amends the sales tax levy contained in section 1354;[11] the rate remains 4.5%.[12] Likewise, the levy of the motor vehicle excise tax is found in 68 O.S. § 2103.[13] That levy has not been increased since 1985,[14] and nothing in HB 2433 amends the levy contained in section 2103.[15] Both before and after the enactment of HB 2433, the levy remains the same: every new vehicle is subject to an excise tax at 3.25% of its value, and every used vehicle is subject to an excise tax of $20.00 on the first $1,500.00 or less of its value plus 3.25% of its remaining value, if any.[16]

¶7 HB 2433 instead does its work by amending the sections of law that provide and give effect to the sales tax exemption for motor vehicles: 68 O.S. §§ 1355 and 2106, respectively. Prior to HB 2433's enactment, section 1355 "specifically exempted from the [sales] tax . . . [the s]ale of motor vehicles . . . on which the Oklahoma Motor Vehicle Excise Tax . . . has been, or will be paid."[17] Section 2106, meanwhile, made clear that "[t]he excise tax levied by this article [wa]s in lieu of all other taxes on the transfer or the first registration in this state of vehicles,"[18] effectively erecting a bar on any other law seeking to impose a sales tax on motor vehicles. After HB 2433, however, section 1355 only exempts motor vehicle sales from "all but a portion of the levy provided under Section 1354 of this title, equal to one and twenty-five-hundredths percent (1.25%) of the gross receipts of such sales."[19] Likewise, and to avoid potential conflict, HB 2433 also amended the bar in 2106 to now provide that "[t]he excise tax levied by this article is in lieu of all other taxes on the transfer or the first registration in this state of vehicles, . . . except: . . . [o]ne and twenty-five-hundredths percent (1.25%) of the gross receipts upon which the tax is levied by Section 1354 of this title."[20] These amendments do not levy a new tax, as their reference to the sales tax levy in section 1354 makes plain. They merely remove, in part, an exemption from a tax that was levied many years prior.

II.

¶8 Our cases have always recognized the important constitutional distinction between measures levying new taxes and measures removing exemptions to already levied taxes. In an unbroken line of decisions dating to near statehood, we have accounted for this distinction through application of a two-part test that limits Article V, Section 33's application to only those measures whose "principal object is the raising of revenue" and which "levy taxes in the strict sense of the word."[21] The first prong isn't seriously in doubt here; the passage of HB 2433 was motivated by a desire to capture additional tax revenue to be used to support state government. But because we have always said that bills must have both features, this case turns on the second prong: whether the measure "levies a tax in the strict sense of the word." Both the facts and the law compel the conclusion that it does not.

A.

¶9 As explained above, HB 2433 does not, as a matter of fact, levy a sales tax on automobiles. That tax was originally levied in 1933, and the most recent levy increasing that tax was in 1989.[22] But for a legislative exemption that was granted to car buyers, sales of automobiles-just like other sales of goods-would be subject to the sales tax.[23] HB 2433 merely revokes a portion of that special exemption from sales tax such that car buyers now receive only a partial exemption from sales tax, rather than the complete exemption they have long enjoyed. HB 2433 thus does not levy a tax; it merely makes automobile sales subject to the sales tax that was levied on automobile sales many decades prior.

¶10 Nor does HB 2433 levy a tax in any legal sense. "Strictly speaking, a levy is the legislative act, whether state or local, which determines that a tax shall be laid, and fixes its amount."[24] We have never held that a measure removing an exemption from an existing tax "levies a tax in the strict sense." That complete absence of precedent for Petitioners' position is strong evidence that removing an exemption has always been understood as something other than the levy of a tax. But stronger evidence still is found in our cases where we have explicitly held that making "certain property . . . theretofore exempt from taxation . . . subject to taxation" (i.e., removing an exemption from taxation) was not a levy of a tax.[25]

¶11 In Leveridge v. Oklahoma Tax Commission,[26] for example, this Court was called on to determine whether Article V, Section 33 applied to a measure modifying an exemption from the automobile excise tax. The purpose of the measure at issue was, as its title stated, "to require payment of vehicle excise tax on manufacturer's factory delivered price as to new vehicles of the latest manufactured model owned by used car dealers when same have not theretofore been registered in Oklahoma and an excise tax paid thereon."[27] In simpler terms, used cars that had previously been titled in another state and which were owned by used car dealers were exempt from the excise tax.[28] Used car dealers discovered that they could take advantage of this exemption by titling new cars in other states, and then selling those cars in Oklahoma as used cars exempt from the tax.[29] Because this exemption was causing the State to miss out on revenue, the Legislature enacted House Bill 885.

¶12 HB 885 amended the law in two ways, both of which were designed to aid in the capture of those lost revenues. First, the measure amended the relevant exemption found in 47 O.S.1951 § 52d "so as to specifically provide that a used car dealer was not exempt from motor vehicle excise tax upon registering a motor vehicle of the 'latest manufactured model' for the first time in Oklahoma, even though the vehicle had theretofore been registered in some other state."[30] Second, because under the existing definitions of "new" and "used" cars, a car owned by a used car dealer was never considered "new," even if it was of the latest model year, the measure amended the definitions in 47 O.S.1951 § 52c so that "a used car dealer could own a 'new vehicle' for the purposes of the Motor Vehicle Excise Tax Act and could therefore be subjected to motor vehicle excise tax on the basis of 100% of the factory delivered price of the vehicle."[31] Neither of these amendments can be fairly construed as having a purpose besides raising revenue.

¶13 Accordingly, we never suggested that the purpose of the measure was anything other than to raise revenue. Had there been a plausible argument that the purpose was something other than raising revenue, one would expect the Tax Commission to make that argument; but it didn't. It instead defended the bill on the basis that it "d[id] not levy a tax in the strict sense of the word."[32] Likewise, if it were the case that the measure in Leveridge failed that first prong of our "revenue bill" test, one would expect this Court to have resolved the case on that basis; but we didn't. We instead resolved the case on the basis that-even if revenue raising was its purpose-the measure didn't levy a tax, holding that "[t]he bill under consideration does not within its four corners levy a tax and for said reason is not per se a revenue bill."[33] In reaching that holding, we reasoned that "at most . . . H. B. 885 . . . merely declare[s] that certain property (automobiles of the latest manufactured models owned by used car dealers) theretofore exempt from taxation (the motor vehicle excise tax) shall thereafter be subject to taxation. Such amendments do not constitute a revenue bill."[34]

¶14 The takeaway from Leveridge is thus straightforward: measures removing exemptions from already levied taxes are not revenue bills. This conclusion was entirely consistent with our constitutional policy disfavoring exemptions, and also with our longstanding Article V, Section 33 test, which requires that a measure "levy a tax in the strict sense" if it is to be considered a revenue bill. Because the measure at issue in Leveridge levied no new tax, but merely removed an exemption from an already levied tax, it didn't meet the test.

B.

¶15 As was the case in Leveridge, HB 2433 doesn't levy a tax in the strict sense because it merely removes a previously granted exemption from an already levied tax, making "certain [transactions] . . . theretofore exempt from taxation . . . subject to taxation." Leveridge should thus be dispositive of this case. Recognizing as much, the Petitioners attempt to distinguish the case, but do so unpersuasively.[35]

¶16 First, Petitioners insist that the measure at issue in Leveridge lacked a revenue-raising purpose. As explained above, however, nothing in Leveridge supports the notion that the measure at issue there had a principal object other than raising revenue. That is not how the bill was defended, it did not serve as any part of our holding in the case, and the title and text of the measure expressed a revenue-raising purpose and nothing else.[36] And while Petitioners are correct in a certain sense when they say that the measure was designed to "close a loophole" that allowed used car dealers to avoid certain taxation, this merely begs the obvious question: Why does government seek to close loopholes in its tax code? To collect more tax revenue, of course.

¶17 At bottom, Petitioners' argument is that HB 2433 must be a revenue bill because it causes people to have to pay more taxes. But to say that removal of an exemption from taxation causes those previously exempt from the tax to pay more taxes is merely to state the effect of removing an exemption. It does not, however, transform the removal of the exemption into the levy of a tax, and it begs the dispositive question of whether removal of an exemption is the "levy of a tax in the strict sense." Indeed, the measure at issue in Leveridge could just as easily have been characterized as "imposing a tax disguised as an exemption removal" on new cars that were previously either taxed not at all or at a lower rate. Yet, despite their common effect (causing someone to have to pay a tax they previously didn't have to pay), removing an exemption and levying a new tax are distinct as a matter of fact and law. Our Constitution's restrictions on the enactment of revenue bills are aimed only at those bills that actually levy a tax. The policy underlying those restrictions is not undercut in an instance such as this, because the original levies of the sales tax on automobile sales were subject to Article V, Section 33's restrictions.

¶18 It has also been suggested that the 1992 passage of State Question 640 modified our definition of "revenue bill" such that we no longer need inquire as to whether the measure levies a tax in the strict sense-in other words, that revenue-raising intent alone should decide the case. We have rejected this notion on three occasions now, including in our recent unanimous decision in Naifeh v. State ex rel. Oklahoma Tax Commission,[37] and were correct to do so each time.

¶19 Article V, Section 33 can best be thought of as having two parts. The first describes the object to which it applies ("revenue bills"), and the second describes the requirements it imposes on those revenue bills. SQ 640 only amended the second part by adding the requirement that revenue bills be approved by either the people or by a super-majority of the Legislature. It did not amend the first part defining the provision's coverage.[38] Our many cases defining "revenue bill"-including Leveridge, which excluded exemption-removing measures from the definition of "revenue bill"-existed at the time SQ 640 was drafted, but the drafters of the amendment chose to leave that portion of Article V, Section 33 unchanged.[39] Thus, both before and after SQ 640, Article V, Section 33 only applies to "revenue bills," and "revenue bills" are only those bills that (1) have the primary purpose of raising revenue for the support of state government and (2) levy a tax in the strict sense of the word.[40] Even putting the plain text aside, no party has provided any evidence that SQ 640 was intended to overrule our prior cases that say the term "revenue bill" does not include measures making "property . . . theretofore exempt from taxation . . . subject to taxation."[41]

¶20 In sum, artificially distinguishing our prior holdings in order to allow some exemption removals but not others would deny the Legislature and the people the legal predictability, regularity, and clarity that it is our obligation to provide. The Legislature would be left guessing as to whether its next attempt to remove an exemption will be treated like the measure in Leveridge, or like the measure at issue here. We instead choose to provide the Legislature with a workable bright line rule: measures whose primary purpose is to raise revenue for the support of state government and which levy a tax in the strict sense are "revenue bills"; measures merely eliminating special exemptions to already levied taxes are not.[42]

III.

¶21 It's understandable that some might at first blush think that our prior cases elevate form over function. After all, as a result of HB 2433, those buying a car will pay more taxes to the State than they did before, even if no new tax was actually levied. But on closer examination it is apparent that the distinction between (1) elimination of a special exemption from an existing tax and (2) a levy of a new tax, is one deeply rooted in our Constitution and in our founders' notions of fair play when it came to bearing the burdens of taxation.

¶22 Oklahoma's preference for the uniform administration of taxes is expressed in our Constitution in a variety of ways. First are the complementary commands of Article X, Section 5, and Article V, Section 50. Together, those provisions demand that "[t]axes shall be uniform upon the same class of subjects,"[43] and that "[t]he Legislature shall pass no law exempting any property within this State from taxation, except as otherwise provided in this Constitution."[44] Likewise, Article V, Section 46, prohibits the Legislature from passing any local or special law that, among other things, "exempt[s] property from taxation,"[45] while Sections 51 and 59, more generally require the uniform application of laws and prohibit the extension of special treatment to favored groups or persons.[46] Read together, these provisions express an unmistakable constitutional policy disfavoring special exemptions from taxation and favoring uniformity of taxation, such that all citizens help shoulder the financial burden of supporting our state government.

¶23 The people articulated in our Constitution only a few limited exceptions to this rule. Article X, Section 6 delineates specifically the people's desire that certain things like libraries, museums, cemeteries, orphanages, churches, etc., be exempt from taxation.[47] The people then sharply limited the Legislature's ability to enlarge those constitutional exemptions or grant new statutory exemptions, while giving the Legislature the authority to revoke any exemptions that existed outside the Constitution. We described this constitutional framework as follows: "the Legislature is vested with power, Sec. 6, Art. 10, Const., to qualify, curtail or annul any exemption from taxation but it is without power to grant exemptions other than those recognized by the Constitution or to enlarge the exemptions so recognized."[48]

¶24 Given all this, it is impossible to conceive that the people-the same people who placed in the Constitution these strong limitations on exemptions and gave the Legislature the power "to qualify, curtail or annul any exemption from taxation"-intended that measures revoking special exemptions would be subject to the strict requirements of Article V, Section 33-requirements whose sole purpose is to hamstring the Legislature's ability to act. Indeed, Petitioners ask us to enshrine in our Constitution a policy in favor of such exemptions by making measures eliminating exemptions subject to Article V, Section 33. Were we to do so, the Legislature would be able to hand out special exemptions with only 51% support, but would not be able to take them back without at least 75% support. The practical effect of such a one-way-ratchet rule is that the many special exemptions from taxation currently existing in our tax code-billions worth, according to the Tax Commission[49]-would be exceedingly difficult to eliminate. That is a result we think wholly inconsistent with the uniformity of taxation policy the people enshrined in our Constitution, a policy designed to ensure that the burdens of supporting our state government were not disproportionately placed on those lacking the political clout to secure special dispensations from taxation.[50]

¶25 Petitioners account for none of this. Accordingly, we reject their request that we replace our Constitution's preference for uniformity with a new policy favoring special exemptions from taxation by making them easy to enact, but all-but-impossible to revoke. Our policy disfavoring new tax levies can-and should-coexist with our policy disfavoring disparity in taxation. Indeed, our obligation as a court is to give vitality to all provisions in the Constitution, and where one constitutional provisions butts up against another, we must harmonize the two rather than allow one to run roughshod over the other.[51]

* * *

¶26 HB 2433 was not enacted in violation of Article V, Section 33. Accordingly, we assume original jurisdiction and deny Petitioners' request for a Writ of Prohibition.

¶27 Any petition for rehearing shall be filed no later than 5 p.m. on the 6th day of September, 2017. If no petition for rehearing is filed by that deadline, this opinion shall be final.

ORIGINAL JURISDICTION ASSUMED. 
PETITION FOR WRIT OF PROHIITION DENIED.

Gurich, V.C.J., Kauger, Winchester, Reif, and Wyrick, JJ., concur.

Combs, C.J. (by separate writing), Watt (by separate writing), Edmondson, and Colbert, JJ., dissent.

FOOTNOTES

[1] Naifeh v. State ex rel. Okla. Tax Comm'n, 2017 OK 63, ¶¶ 1, 3, --- P.3d ---.

Article V, Section 33 provides as follows:

A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.

B. No revenue bill shall be passed during the five last days of the session.

C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.

D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of the Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.

[2] Naifeh, 2017 OK 63, ¶ 0, --- P.3d ---.

[3] HB 2433, 56th Leg. (Okla. 2017) (enacted) [hereinafter "HB 2433" or "the Act"].

[4] House Journal, 56th Leg., 1st Reg. Sess. 1316-17 (Okla. 2017) (showing passage of HB 2433 in the House by a vote of 52 ayes to 47 nays-with 2 vacancies-on May 24, 2017); Senate Journal, 56th Leg., 1st Reg. Sess. 1260-61 (Okla. 2017) (showing passage in the Senate by a vote of 25 ayes to 18 nays-with 3 excused votes and 2 vacancies-on May 26, 2017).

[5] Leveridge v. Okla. Tax Comm'n, 1956 OK 77, ¶¶ 0, 13, 294 P.2d 809, 809, 812; Cornelius v. State ex rel. Cruce, 1914 OK 222, ¶ 9, 140 P. 1187, 1189 (quoting Mumford v. Sewell, 4 P. 585, 587 (Or. 1883)).

[6] See Oklahoma Sales Tax Law, ch. 196, § 5, 1933 O.S.L. 456, 460 (repealed 1935); Oklahoma Consumers' Tax Law of 1935, ch. 66, art. 7, § 4, 1935 O.S.L. 308, 309 (repealed 1937); The Consumers and Users Tax Act, 1937, ch. 66, art. 10, § 5, 1937 O.S.L. 445, 447 (repealed 1939); The Consumers and Users Tax Act, 1939, ch. 66, art. 11, § 5, 1939 O.S.L. 448, 451 (repealed 1941); 68 O.S.1961 § 1251c (repealed 1963) (originally enacted as The Sales Tax Act, 1941, tit. 68, ch. 27, § 5, 1941 O.S.L. 383, 385); 68 O.S.Supp.1963 § 13-1304 (renumbered 1965) (originally enacted as Oklahoma Sales Tax Code, ch. 367, sec. 2, § 1304, 1963 O.S.L. 680, 682); 68 O.S.1971 § 1304 (amended 1980 & repealed 1981) (renumbered from 68 O.S. § 13-1304 by Act of June 14, 1965, ch. 215, § 2, 1965 O.S.L. 378, 378); 68 O.S.Supp.2016 § 1354 (originally enacted as Act of June 29, 1981, ch. 313, sec. 2, § 1354, 1981 O.S.L. 1069, 1073).

[7] Oklahoma Consumers' Tax Law of 1935, ch. 66, art. 7, § 5(f), 1935 O.S.L. 308, 310 (repealed 1937) ("There are hereby specifically exempted from the [sales] tax imposed by this Act, the following: . . . (f) The gross proceeds derived from the sale and/or purchase of any tangible personal property and/or service subject to any stamp, excise or any other kind of tax, imposed under and by virtue of Article Ten (10), Section Twelve (12) of the Constitution of the State of Oklahoma . . . ."); The Consumers and Users Tax Act, 1937, ch. 66, art. 10, § 6(a), 1937 O.S.L. 445, 448 (repealed 1939) (specifically making mention for the first time of "[g]ross receipts or gross proceeds derived from the sale of motor vehicles" within the exemption); The Consumers and Users Tax Act, 1939, ch. 66, art. 11, § 6(n), 1939 O.S.L. 448, 454 (repealed 1941); 68 O.S.1961 § 1251d(1)(m) (repealed 1963) (originally enacted as The Sales Tax Act, 1941, tit. 68, ch. 27, § 6(1)(n), 1941 O.S.L. 383, 387); 68 O.S.Supp.1963 § 13-1305 (renumbered 1965) (originally enacted as Oklahoma Sales Tax Code, ch. 367, sec. 2, § 1305(l), 1963 O.S.L. 680, 683); 68 O.S.Supp.1971 § 1305 (amended 1975 & 1980, repealed 1981) (renumbered from 68 O.S. § 13-1305 by Act of June 14, 1965, ch. 215, § 2, 1965 O.S.L. 378, 378); 68 O.S.Supp.2016 § 1355(2) (originally enacted as Act of June 29, 1981, ch. 313, sec. 2, § 1355(D), 1981 O.S.L. 1069, 1075).

The original enactment of this exemption from the sales tax coincided with the first levy of the motor vehicle excise tax in 1935, see Act of Apr. 22, 1935, ch. 66, art. 12, § 1, 1935 O.S.L. 328, 328, which has remained on the books ever since, see id. (repealed 1937); Motor Vehicle Excise Tax, ch. 50, art. 8, § 4, 1937 O.S.L. 362, 364 (repealed 1939); Act of Apr. 18, 1939, ch. 66, art. 13, § 3, 1939 O.S.L. 463, 465 (repealed 1941); 47 O.S.1961 § 52b (repealed 1963) (originally enacted as Act of Feb. 10, 1941, tit. 47, ch. 2, § 3, 1941 O.S.L. 195, 196); 47 O.S.Supp.1963 § 21-103 (renumbered 1965) (originally enacted as Oklahoma Vehicle Excise Tax Code, ch. 361, sec. 2, § 2103, 1963 O.S.L. 623, 624); 68 O.S.Supp.2016 § 2103 (renumbered from 68 O.S. § 21-103 by Act of June 14, 1965, ch. 215, § 3, 1965 O.S.L. 378, 378).

[8] HB 2433, §§ 1-2.

[9] 68 O.S.Supp.2016 § 1354.

[10] See Act of Apr. 25, 1989, ch. 2, § 101, 1989 O.S.L.Supp. 167, 240 (raising the sales tax from 4% to 4.5%).

[11] See generally HB 2433.

[12] § 1354(A).

[13] 68 O.S.Supp.2016 § 2103.

[14] Act of June 21, 1985, ch. 179, § 90, 1985 O.S.L. 588, 667 (raising the excise tax from 2% to 3.25%).

[15] See generally HB 2433.

[16] § 2103(A)(1).

[17] 68 O.S.Supp.2016 § 1355(2).

[18] 68 O.S.2011 § 2106(a).

[19] HB 2433, § 1 (emphasis added).

[20] Id. § 2 (emphasis added).

[21] Anderson v. Ritterbusch, 1908 OK 250, ¶ 11, 98 P. 1002, 1006 (quoting In re The Nashville, 17 F. Cas. 1176 (D. Ind. 1868)), overruled on other grounds by Fent v. Fallin, 2014 OK 105, ¶¶ 7, 17-18, 345 P.3d 1113, 1115-16, 1118 (overruling dicta in ¶ 14 of the Anderson opinion that suggested the definition of "raising revenue" might include bills resulting in a decrease of revenue); accord Naifeh, 2017 OK 63, ¶ 17, --- P.3d ---; Ali v. Fallin, 2017 OK 39, --- P.3d ---; Fent, 2014 OK 105, ¶¶ 6, 10, 345 P.3d at 1115-16; Calvey v. Daxon, 2000 OK 17, ¶¶ 10-14, 997 P.2d 164, 169-70; Fent v. Okla. Capitol Improvement Auth., 1999 OK 64, ¶ 12, 984 P.2d 200, 209; In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 3 n.3, 820 P.2d 772, 774 n.3; Bd. of Cnty. Comm'rs of Lincoln Cnty. v. Okla. Pub. Emps. Ret. Sys., 1965 OK 111, ¶¶ 22-23, 405 P.2d 68, 72-73; Leveridge, 1956 OK 77, ¶ 8, 294 P.2d at 811; Pure Oil Co. v. Okla. Tax Comm'n, 1936 OK 516, ¶ 10, 66 P.2d 1097, 1100; Wallace v. Gassaway, 1931 OK 210, ¶ 18, 298 P. 867, 870; Ex parte Sales, 1924 OK 668, ¶ 7, 233 P. 186, 187; Lusk v. Ryan, 1918 OK 94, ¶ 3, 171 P. 323, 324; In re Lee, 1917 OK 458, ¶ 32, 168 P. 53, 57; Trustees', Executors' & Sec. Ins. Corp. v. Hooton, 1915 OK 1059, ¶¶ 24-26, 157 P. 293, 298; Cornelius, 1914 OK 222, ¶ 10, 140 P. at 1189. These cited cases establish that we have consistently and always applied the traditional two-part test in all Article V, Section 33 cases-a test requiring that a measure "levy a tax in the strict sense of the word," which necessarily excludes measures that eliminate exemptions because such measures simply do not levy a tax in the strict sense of the word. We have only decided two Article V, Section 33 cases involving exemptions (both of which held that measures eliminating exemptions are not subject to Article V, Section 33) in over a century of hearing such challenges, which bolsters the conclusion that measures eliminating exemptions have not traditionally been understood as falling within Article 5, Section 33's purview.

[22] See supra notes 6, 10 and accompanying text.

[23] Automobiles would hardly be the first goods subjected to both excise and sales tax. See, e.g., 37 O.S.Supp.2016 § 576(C) (imposing a gross receipts tax upon mixed alcoholic beverages that would "be in addition to the excise tax levied in Section 553 of this title, the sales tax levied in the Oklahoma Sales Tax Code and to any municipal or county sales taxes").

[24] Olson v. Okla. Tax Comm'n, 1947 OK 58, ¶11, 180 P.2d 622, 624 (defining the word "levy" as used in Article X, § 12 of the Oklahoma Constitution); In re Protest of First Nat'l Bank of Guthrie, 1929 OK 183, ¶ 8, 276 P. 766, 767 (quoting 3 Thomas McIntyre Cooley, The Law of Taxation § 1012, at 2043-44 (Clark A. Nichols ed., 4th ed. 1924)) (defining the word "levy" as used in Article X, § 9 of the Oklahoma Constitution and in O.S.1921 § 9692).

[25] Leveridge, 1956 OK 77, ¶¶ 0, 13, 294 P.2d at 809, 812; Cornelius, 1914 OK 222, ¶ 9, 140 P. at 1189 (quoting Mumford, 4 P. at 587).

[26] 1956 OK 77, 294 P.2d 809.

[27] Act of May 26, 1955, tit. 47, ch. 2, 1955 O.S.L. 262, 262.

[28] See 47 O.S.1951 § 52d(e) ("An original or a transfer certificate of title shall be issued without the payment of the excise tax levied by this Act for: . . . (e) Any vehicle legally owned by a person licensed as a dealer in used cars or parts, under the provisions of the Vehicle License and Registration Act, [47 O.S.1951 §§ 22 to 22.25,] and offered for sale by such person.").

[29] See Leveridge, 1956 OK 77, ¶¶ 1, 4, 294 P.2d at 809-10 (describing how S.B. Leveridge, a used car dealer, had titled a new Ford vehicle in Missouri and had then attempted to obtain an original certificate of title from the Tax Commission without paying the excise tax required for new vehicles but not for used vehicles). Prior to the amendment of the excise tax exemption that was at issue in the Leveridge case, used car dealers had successfully employed this modus operandi with the blessings of this Court. See Kendall v. Okla. Tax Comm'n, 1955 OK 38, 283 P.2d 511. In fact, this Court's willingness in the Kendall case to allow used car dealers to avoid the excise tax was likely part of the impetus for the Legislature's amendment of the exemption statute that eventually led to the challenge in the Leveridge case.

[30] Leveridge, 1956 OK 77, ¶ 7, 294 P.2d at 811.

[31] Id. ¶ 6, 294 P.2d at 811.

[32] Id. ¶ 4, 294 P.2d at 810.

[33] Id. ¶ 12, 294 P.2d at 811.

[34] Id. ¶ 13, 294 P.2d at 812.

[35] While some may disagree with our holding in Leveridge, we have continued to rely on Leveridge as good law, including in post-1992 cases. See Naifeh, 2017 OK 63, ¶ 21 n.39, --- P.3d ---; Calvey, 2000 OK 17, ¶¶ 10 n.11, 18 n.24, 997 P.2d at 168 n.11, 171 n.24. Even if overruling Leveridge were proper as a matter of stare decisis, to pull the rug out from under the Legislature in a decision not limited to prospective application would be problematic, given our longstanding rule that "[w]e uphold the legislative enactment unless the statute is clearly, palpably and plainly inconsistent with the constitution." Zeier v. Zimmer, Inc., 2006 OK 98, ¶ 12, 152 P.3d 861, 866 (emphasis added). We find it impossible to conclude that HB 2433 is clearly, palpably, and plainly unconstitutional where (1) we have never before held that such a measure is a revenue bill, (2) we have previously explicitly held that measures removing exemptions are not revenue bills, and (3) we have explicitly held that the 1992 amendment did not change the definition of "revenue bill."

[36] See supra notes 27, 30-34 and accompanying text.

[37] 2017 OK 63, ---P.3d --- (applying the traditional two-part test); Fent, 2014 OK 105, ¶ 16, 345 P.3d at 1117; Calvey, 2000 OK 17, ¶¶ 13-14, 997 P.2d at 169-70.

[38] Calvey, 2000 OK 17, ¶¶ 13-14, 997 P.2d at 169-70.

[39] The ballot title of SQ 640, where it said that SQ 640 "would change the method by which state government makes laws that raise revenue," does not support the notion that SQ 640 changed the definition of "revenue bill." No one disputes that SQ 640 "changed the method by which state government makes laws that raise revenue" by adding a requirement that "revenue bills" be enacted either by the people or by a super-majority of the Legislature-a hugely significant change that made it vastly more difficult for the Legislature to enact revenue bills. This phrase from the ballot title tells us nothing, however, about whether SQ 640 changed the definition of "revenue bill." As we have repeatedly held, it didn't. Fent, 2014 OK 105, ¶¶ 10, 16, 345 P.3d at 1116-17 (stating that that the 1992 amendment "did not change the clearly settled meaning of the terms, 'revenue bill' or 'bill for raising revenue'" and that "no change was made to the definition of 'raising revenue' in 1992"); Calvey, 2000 OK 17, ¶¶ 13-14, 997 P.2d at 169-70. And we know this because the text of the amendment left the term "revenue bill" and other scope-defining portions of Article V, Section 33 unchanged, and the ballot title describes no such definition-changing purpose. Indeed, this Court reviewed that ballot title to ensure that it adequately explained the effect of the measure, and we approved that ballot title. In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, 820 P.2d 772. Had SQ 640 been designed to change the definition of "revenue bill," we would not have approved the ballot title unless it sufficiently explained that purpose to the people; we would not have allowed SQ 640 to erase a century of well understood meaning sub silentio. And as a matter of original public meaning, in looking to how the public in 1992 would have understood the term "revenue bill," a term with a well-defined legal meaning, we recognize that the public would have understood the term to mean what it had consistently meant for the past 100 years of Oklahoma law. See Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."). For example, if the people chose to amend our due process clause to make it now apply to deprivations of "life, liberty, property, or happiness," no one would argue that the prior centuries-worth of law defining what constitutes "due process" should be cast aside. Instead, all would understand that the amendment merely added one thing to the list of things that cannot be taken away without due process, but that due process means what our prior cases have said it means.

[40] Calvey, 2000 OK 17, ¶ 14, 997 P.2d at 170 ("The 1992 amendment of art. 5, § 33 merely changed the method state government may use to raise revenue. It did not change the clearly settled meaning of the terms, 'revenue bill' or 'bill for raising revenue.' . . . We determine, consistent with cases spanning in excess of the last ninety years, that: 1) revenue bills are those laws whose principal object is the raising of revenue and which levy taxes in the strict sense of the word; and 2) laws under which revenue may incidentally arise are not 'revenue bills' or 'bills for raising revenue' within the meaning of art. 5, §33."). Fent made it abundantly clear that our pre-1992 cases defining "revenue bill" remain good law, a fact confirmed by our application of the traditional two-part test for revenue bills in the Article V, Section 33 cases we have decided since. Indeed, one need not read past the syllabus of Naifeh to discover that we "[a]ppl[ied] the test we have utilized since 1908," Naifeh, 2017 OK 63, ¶ 0, --- P.3d ---, while in Fent we repeatedly looked to that same 1908 test as controlling, Fent, 2014 OK 105, ¶ 6, 345 P.3d at 1115 (citing Anderson, 1908 OK 250, 98 P. 1002). In Fent, we looked to the context surrounding the enactment of the 1992 amendment not to redefine the term "revenue bill," but rather to answer a question that had never been posed to this Court-namely, whether measures that result in less revenue for the State can be considered "revenue bills" or "bills for raising revenue"-and that context helped shed light on the proper answer to that previously unanswered question. Id. ¶¶ 6-7, 17, 345 P.3d at 1115-18 Accordingly, Fent did not require us to abandon or even modify a pre-1992 holding, nor did it require us to "change" any prior law defining the term "revenue bill"; we merely clarified that any dicta in Anderson suggesting that the term "revenue bill" might encompass a revenue-decreasing measure was not controlling. Id. (explicitly acknowledging that Anderson "did not involve a bill which decreased revenue," but "to the extent that Anderson v. Ritterbusch implies" that a bill which decreases revenue could be a revenue bill, "it is expressly overruled." (emphasis added)). Arguments to the contrary fail to account for the fact that in Fent-just as in Calvey before it and Naifeh after it-we confirmed the 1992 amendment "did not change the clearly settled meaning of the terms, 'revenue bill' or 'bill for raising revenue.'" Id. ¶ 16, 345 P.3d at 1117.

[41] Fent makes clear that Article V, Section 33 only applies to legislation that increases revenue, but Fent does not declare that Article V, Section 33 applies to all legislation that increases revenue. If that were the case, then there would be no need to distinguish those measures that primarily raise revenue from those that incidentally do so and no need to distinguish between measures that levy taxes from measures that impose fees. But see Naifeh, 2017 OK 63, ¶¶ 43-49, --- P.3d --- (doing just that). Indeed, there would be no need for a two-part test at all.

[42] To be clear, this rule merely allows the Legislature to amend statutory language that specifically exempts certain property from an already levied tax, making property that would have been subject to the tax-but for the exemption-subject going forward. Cf. Apache Corp. v. State ex rel. Okla. Tax Comm'n, 2004 OK 48, ¶ 10, 98 P.3d 1061, 1064 (describing a tax exemption as a "matter[] of legislative grace"); William Clairmont, Inc. v. State, 261 N.W.2d 780, 783-84 (N.D. 1978) (describing an exemption as "a special freedom from taxation imposed upon others"). It does not, as Petitioners' arguments would suggest, allow the Legislature to add new classes of property to a tax that was never designed to apply to that property-e.g., amending the gasoline tax to apply to a gallon of milk. See Pet'rs' Reply Br. 7-8. The gallon of milk in that example cannot be "exempt" from the gasoline tax, as the milk was never subject to the tax in the first place. Subjecting milk to the gasoline tax would therefore constitute a levy of a new tax, rather than a mere removal of an exemption from an already levied tax.

[43] Okla. Const. art. X, § 5(B).

[44] Okla. Const. art. V, § 50.

[45] Id. § 46 ("The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . [e]xempting property from taxation; . . . .").

[46] See id. § 51 ("The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."); id. § 59 ("Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.").

[47] Okla. Const. art. X, § 6(A). Article X, Section 6 provides as follows:

A. Except as otherwise provided in subsection B of this section, all property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States except property for which a federal agency obtains title through foreclosure, voluntary or involuntary liquidation or bankruptcy unless the taxation of such property is prohibited by federal law; all property of this state, and of counties and of municipalities of this state; household goods of the heads of families, tools, implements, and livestock employed in the support of the family, not exceeding One Hundred Dollars ($100.00) in value, and all growing crops, shall be exempt from taxation: Provided, that all property not herein specified now exempt from taxation under the laws of the Territory of Oklahoma, shall be exempt from taxation until otherwise provided by law.

All property owned by the Murrow Indian Orphan Home, located in Coal County, and all property owned by the Whitaker Orphan Home, located in Mayes County, so long as the same shall be used exclusively as free homes or schools for orphan children, and for poor and indigent persons, and all fraternal orphan homes, and other orphan homes, together with all their charitable funds, shall be exempt from taxation, and such property as may be exempt by reason of treaty stipulations, existing between the Indians and the United States government, or by federal laws, during the force and effect of such treaties or federal laws. The Legislature may authorize any incorporated city or town, by a majority vote of its electors voting thereon, to exempt manufacturing establishments and public utilities from municipal taxation, for a period not exceeding five (5) years, as an inducement to their location.

Up to one hundred (100) square feet of a storm shelter designed for protection and safety from tornadoes or tornadic winds and installed or added to an improvement to real property after January 1, 2002, shall be exempt from taxation. A storm shelter shall include, but not be limited to, a safe room built as part of and within an improvement to real property. If title to property with an exempt storm shelter is transferred, changed or conveyed to another person, such storm shelter shall be assessed for that year based on the fair cash value as set forth in Section 8 of this article.

B. The board of county commissioners of any county may call a special election to determine whether or not household goods of the heads of families and livestock employed in support of the family located within the county shall be exempt from ad valorem taxation. Such an election shall also be called by the board upon petition signed by not less than twenty-five percent (25%) of the registered voters of the county. Upon passage of the question, the exemption provided for in this subsection shall become effective on January 1 of the following year.

[48] Cnty. Assessor, Okla. Cnty. v. United Bhd. of Carpenters & Joiners of Am., Local No. 329, 1949 OK 240, ¶ 17, 211 P.2d 790, 794 (citing Beta Theta Pi Corp. v. Bd. of Comm'rs of Cleveland Cnty., 1925 OK 176, 234 P. 354).

[49] See Pet'rs' Reply Br. 7 & nn.9-10 (citing Pet'rs' App'x, Doc. 12, Tax Policy Div., Okla. Tax Comm'n, Tax Expenditure Report 2015-2016, available at https://www.ok.gov/tax/documents/ Tax%20Expenditure%20Report%202015-2016.pdf).

[50] There are undoubtedly some who think a rule making special exemptions difficult to revoke would be a victory for taxpayers. But it wouldn't be; it would be a victory for the status quo. Those lucky enough to have successfully lobbied for the many special exemptions that litter our tax code would celebrate the prospect that their exemptions were here to stay. Those not so lucky, however, would be left to continue holding the bag, forced to shoulder more than their fair share of the burden of supporting state government. And as our budget crisis persists, the Legislature would be left to confront it lacking the best and most equitable tool it has at its disposal to find new revenue: the ability to clean up our tax code so as to provide more of the uniformity and equity that our Constitution demands.

[51] Okla. City Urban Renewal Auth. v. Med. Tech. & Research Auth. of Okla., 2000 OK 23, ¶ 17, 4 P.3d 677, 686 ("[C]onstitutional provisions are construed to harmonize with each other with a view to giving effect to each and every provision."); Jones v. Winters, 1961 OK 224, ¶ 42, 365 P.2d 357, 363 ("It is a universally recognized rule of construction that, in ascertaining both the intent and general purpose, as well as the meaning, of a constitution or a part thereof, it should be construed as a whole. As far as possible, each provision should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every provision in so far as it shall be consistent with a construction of the instrument as a whole." (quoting Latting v. Cordell, 1946 OK 217, ¶ 7, 172 P.2d 397, 399)).

 

 

COMBS, C.J., with whom WATT and COLBERT, JJ., join, dissenting:

¶1 The majority opinion relies heavily upon only one decision of this Court upholding the constitutionality of a measure that removed a tax exemption without complying with Okla. Const. art. 5, § 33; Leveridge v. Oklahoma Tax Comm'n, 1956 OK 77, 294 P.2d 809. However, that decision is not dispositive to this action. The majority also relies upon the Oklahoma Constitution's disfavor of special exemptions.[1] I do not believe the limitations on exemptions in our Constitution somehow show intent to immunize any legislation that removes a tax exemption from the enhanced restrictions placed upon the Legislature in 1992 by the people of this State. On March 10, 1992, the people of Oklahoma voted in favor of State Question Number 640, Initiative Petition Number 348, which amended Okla. Const. art. 5, § 33.[2] These amendments created subsections C and D of § 33 and provide any revenue bill proposed by the House of Representatives shall not be effective until referred to a vote of the people unless it receives the approval of three-fourths of the membership of both houses of the Legislature.[3] The effective date of revenue bills passed by the Legislature was also restricted. H.B. 2433 did not conform to these restrictions. It was passed during the last five days of the legislative session, it did not receive the support of three-fourths of the membership of the Oklahoma House of Representatives and the Oklahoma State Senate, and it became effective within 90 days from the date of its approval. Nowhere in the ballot title or in the text of State Question Number 640 is the term "levy a tax" found. The amendments to Okla. Const. art. 5, § 33 provided in State Question Number 640 were made to address the issue of raising revenue. As found in the ballot title, the obvious purpose and intent of the State Question was to restrict the Legislature's ability to raise revenue from the citizens.

¶2 The majority opinion determines H.B. 2433 need not comply with the provisions of Okla. Const. art. 5, § 33, because it is not a revenue bill. In determining whether a bill is a revenue bill this Court has held:

"'Revenue laws' are those laws only whose principal object is the raising of revenue, and not those under which revenue may incidentally arise," and that "'Revenue bills' are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue."

Leveridge v. Oklahoma Tax Commission, 1956 OK 77, ¶8, 294 P.2d 809 (quoting Anderson v. Ritterbusch, 1908 OK 250, 98 P. 1002).

¶3 Petitioners argue H.B. 2433 is plainly intended to raise revenue. The bill's title states it is "[a]n Act relating to revenue and taxation." They claim it is concerned solely with the collection of a sales tax on motor vehicles without a single provision that concerns another topic. Although Petitioners concede the language of the bill was worded to look like a partial repeal of a sales tax exemption they argue it is in essence the functional equivalent of a 1.25% increase in the excise tax. A majority of the estimated revenue from the new tax will go to the State's General Revenue Fund.[4]

¶4 The majority opinion agrees with Respondent's assertion that the bill is merely a partial removal of a tax exemption and this Court has held that a bill that "merely declare[s] that certain property. . . theretofore exempt from taxation . . . shall thereafter be subject to taxation . . . do[es] not constitute a revenue bill." Leveridge v. Oklahoma Tax Commission, 1956 OK 77 at ¶13; Cornelius v. State, 1914 OK 222, ¶9, 140 P. 1187. The majority holds H.B. 2433 is no different from the bill at issue in Leveridge which removed an exemption from a tax that already existed.

 

¶5 In Leveridge v. Oklahoma Tax Commission, 1956 OK 77, 294 P.2d 809, an Oklahoma used car dealer was denied a motor vehicle tax refund. The dealer, Leveridge, appealed the Oklahoma Tax Commission's decision to deny the refund. Leveridge challenged the constitutionality of a recently passed House Bill that removed an exemption from excise tax on certain used motor vehicles.[5] The bill, H.B. 885 (1955), was passed within the last five days of session and Leveridge asserted it was a revenue bill and was passed in violation of Okla. Const. art. 5, § 33. H.B. 855 was concerned with clarifying the status of motor vehicles registered in this State for excise tax purposes. The Tax Commission acknowledged the revenue raised by the bill would be very limited. Id. We determined the general rule which this Court has followed is that a revenue bill is one whose principal object is the raising of revenue and not under which revenue may incidentally arise; in addition, revenue bills are those that levy taxes in the strict sense of the word and are not bills for other purposes which may incidentally create revenue. Leveridge v. Oklahoma Tax Commission, 1956 OK 77 at ¶¶ 8-9. We held H.B. 885 "does not within its four corners levy a tax and for said reason is not per se a revenue bill." Leveridge v. Oklahoma Tax Commission, 1956 OK 77 at ¶12. H.B. 885 merely declared certain property theretofore exempt from taxation to thereafter be subject to taxation, thus closing the loophole which avoided the payment of the appropriate tax. Leveridge v. Oklahoma Tax Commission, 1956 OK 77 at ¶13. Such amendments, we held, did not create a revenue bill and therefore the passing of H.B. 885 did not need to comply with the provisions of Okla. Const. art. 5, § 33. Id.

¶6 The majority opinion holds even if the principal object of H.B. 2433 was to raise revenue it does not violate Okla. Const. art. 5, § 33 if it does not levy a tax in the strict sense of the word because Leveridge provides the removal of a tax exemption does not constitute a levy of a tax. This case is, in reality, one of first impression because, unlike Leveridge, we are dealing with a bill whose principal object is to raise revenue. The core issue in this matter is whether the partial removal of a sales tax exemption constitutes the levy of a tax in the strict sense of the word when the principal object of the removal is to raise revenue rather than having the effect of creating revenue incidentally. The facts of Leveridge distinguish it from this cause. The principal object of the bill in Leveridge was to close a loophole that allowed used car dealers to avoid certain taxation through clever maneuvering. Its principal object was not to raise revenue. Any revenue created by S.B. 855 was merely incidental.

¶7 In Fent v. Fallin, we found from reading the ballot title and the text of the measure together, State Question Number 640 had two primary purposes. 2014 OK 105, ¶14, 345 P.3d 1113. First, it had the effect of limiting the generation of State revenue to existing revenue measures. Fent v. Fallin, 2014 OK 105 at ¶14. Second, it required future bills "intended to raise revenue" to be approved by either a vote of the people or a three-fourths majority in both houses of the Legislature. Id. We determined, one of its overriding purposes was clearly to "secure tax relief." Fent v. Fallin, 2014 OK 105 at ¶15. In Calvey v. Daxon, 2000 OK 17, 997 P.2d 164, we said the 1992 amendments did not change the clearly settled meaning of the terms "revenue bill" or "bill for raising revenue." Fent v. Fallin, 2014 OK 105 at ¶16. However, we noted Calvey concerned the transfer of money by the Legislature from fee-generating funds to a special cash fund and did not specifically address the 1992 ballot title or the aim of State Question Number 640. Fent v. Fallin, 2014 OK 105 at ¶16. We held that nothing in the 1992 ballot title or text of the measure restricted the Legislature from amending existing revenue measures as long as such amendments "do not 'raise' or increase the tax burden." Fent v. Fallin, 2014 OK 105 at ¶17.

¶8 A constitutional provision must be construed considering its purpose and given a practical interpretation so that the purpose of the framers and the people who adopted it may be carried out. Fent v. Fallin, 2014 OK 105 at ¶17. Constitutional provisions are not made for parsing by lawyers, but are meant for the instruction of the people and the representatives of government, so that they may read and understand their rights and duties. Fent v. Fallin, 2014 OK 105 at ¶12. The principal object of H.B. 2433 is clearly to raise revenue. There is no other purpose in H.B. 2433 for which revenue is incidentally created. To ignore this principal object and claim the purpose is merely to remove a tax exemption makes a mockery of the purpose upon which the framers and the people adopted State Question Number 640. The majority opinion would open the door to allow the Legislature in one year to pass a law that provides a new tax with specific exemptions by three-fourths of the Legislature and the next year pass a law by only a simple majority to remove the exemption subjecting the previous year's tax to those formerly exempt. All kinds of new taxes could be imposed under this scheme without the protections provided in Okla. Const. art. 5, § 33. Interpreting our precedent to allow such a loophole is incongruous to the intent of the voters of this State when they approved State Question Number 640.

¶9 H.B. 2433 also levies a tax in the strict sense of the word, and is not a bill for another purpose which incidentally creates revenue. The effect of H.B. 2433 is to increase the excise tax on motor vehicles by 1.25%. It accomplishes this by disguising the 1.25% excise tax increase as a partial removal of a sales tax exemption. The amended language in Section 3 of the Act provides "the sales tax associated with the purchase of a motor vehicle shall be paid by the consumer in the same manner and time as the motor vehicle excise tax for said motor vehicle is due." This new 1.25% sales tax is therefore treated in the same manner as the excise tax. The Act provides a sales tax levy for a specific amount and the manner in which it is to be paid by the consumer. The clear intent and purpose of H.B. 2433 was to increase the amount of tax paid by an Oklahoma consumer to 4.5%. Had the Legislature in a straight forward manner attempted to increase the excise tax by 1.25% the requirements of art. 5, § 33 would clearly have been applicable. Calling it a sales tax but collecting it as an excise tax makes little difference to the consumer. It is a tax. The tax exemption being removed, albeit partially, was first granted in 1935 and has been relied upon by the Oklahoma consumer for over 80 years. If you have purchased a vehicle since July 1, 2017, and have paid an additional 1.25% in sales tax, you would certainly feel that the provisions of H.B. 2433 "levy a tax".

¶10 The message sent by the people of Oklahoma through approval of State Question 640 in 1992 is clear: their purpose was to make it more difficult to raise revenue from the citizens of Oklahoma. H.B. 2433 defies the purpose behind State Question 640 by generating tremendous revenue for the state under the guise of removing a portion of a sales tax exemption on motor vehicles without complying with the provisions of Okla. Const. art. 5, § 33. The aim of the people in adopting State Question 640 must not be thwarted by such parsing of words and definitions. The Legislature must not be allowed to circumvent the requirements of Okla. Const. art. 5, § 33 when the clear principal object and purpose is to raise new revenue. A court's constitutional analysis must be based upon what a piece of legislation actually accomplishes rather than what a Legislature states it is accomplishing. Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶21, 373 P.3d 1057. The effect of H.B. 2433 is to raise the excise tax on motor vehicles by 1.25% by removing a portion of a sales tax exemption. It is collected in the manner as existing excise tax not at the point of sale as in a sales tax. Revenue created under H.B. 2433 is not incidental. There is no other identifiable purpose behind H.B. 2433 except to raise revenue. H.B. 2433 is a revenue bill.

¶11 H.B. 2433, 2017 Okla. Sess. Laws c. 356, is a revenue bill because its principal purpose is to raise revenue, it levies a tax in the strict sense of the word and is not a bill for another purpose which incidentally creates revenue. It was passed during the last five days of the legislative session, it did not receive the support of three-fourths of the membership of the Oklahoma House of Representatives and the Oklahoma State Senate, and it became effective within 90 days from the date of its approval. The passage of H.B. 2433 by the Legislature clearly did not conform to the mandates of Okla. Const. art. 5, § 33, as amended by the people in State Question Number 640.

¶12 The effect of the majority opinion is that the many special exemptions from taxation currently existing in our tax code, $10 billion worth according to the Oklahoma Tax Commission, will be subject to elimination by a simple majority of the legislature and the approval of the Governor. No one presently enjoying a tax exemption will be immune from this procedural vote. The purpose and intent of State Question 640 is now eviscerated, and the citizens of Oklahoma who enjoy a benefit of a tax exemption will be subject to the legislative act of a simple majority as a method of raising revenue.

¶13 Therefore, I dissent to the majority's holding that H.B. 2433 is constitutional.

FOOTNOTES

[1] Okla. Const. art. 5, § 50 provides "[t]he Legislature shall pass no law exempting property within this State from taxation, except as otherwise provided by the Constitution."

[2] The ballot title for Initiative Petition Number 348 provided:

The measure amends the State Constitution. It adds new provisions to Section 33 of Article 5. These would change the method by which state government makes laws that raise revenue. The measure requires that a bill to raise revenue be voted upon by the people at the next general election. A bill would not be effective until it was approved by a majority of the voters. The measure also provides a way that a revenue bill could become law without a vote of the people. A bill would have to be approved by a ¾ vote of each house of the legislature and go to the governor for proper action. A revenue bill approved by a ¾ vote of each house of the legislature would not become effective until ninety days after the approval date. Such a bill would not be subject to the emergency measure provision. (Emphasis added).

[3] Okla. Const. art. 5, § 33 (C) & (D):

C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.

D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.

[4] Attached to Petitioners appendix at Tab 8 is a document purportedly prepared by the Oklahoma Tax Commission showing $103,161,000.00 of the estimated $123,383,000.00 created by H.B. 2433 will go to the General Revenue Fund of the State.

[5] H.B. 885 (1955) amended 47 O.S. 1951, § 52d as follows:

An original or a transfer certificate of title shall be issued without the payment of the excise tax levied by this Act for:

(a) Any vehicle owned by a non-resident person who operates principally in some other state but who is in Oklahoma only occasionally;

(b) Any vehicle brought into this State by a person formerly living in another state, who has owned and registered said vehicle in such other state of his residence at least ninety (90) sixty (60) days prior to the time it is required to be registered in this State;

(c) Any vehicle registered by the State of Oklahoma, or by any of the political sub-divisions thereof;

(d) Any vehicle, the legal ownership of which is obtained by the applicant for a certificate of title by inheritance or by the reorganization of a corporation or liquidation of a partnership;

(e) Any vehicle legally which is owned and being offered for sale by a person licensed as a dealer in used cars or parts, under the provisions of the Motor Vehicle License and Registration Act, and offered for sale by such person;:

(1) If such vehicle has been registered in Oklahoma and the vehicle excise tax paid thereon; or,

(2) When such vehicle has been registered in some other state but such vehicle is not the latest manufactured model.

Provided, the provisions of paragraph (e) of this Section shall not be construed as allowing an exemption to any person not licensed as a used car dealer in this State;

(f) Any vehicle by which ownership was obtained by foreclosure of his a lien in the manner provided by law or under subrogated rights arising by reason of loss under an insurance contract;

(g) Any vehicle which is taxed on an ad valorem basis.

The amendment to subsection (e) would create additional revenue where a new vehicle which is the latest manufactured model that has been regularly registered in some other state and there used, and following such use is sold to an Oklahoma used car dealer who registers the vehicle in Oklahoma. Leveridge v. Oklahoma Tax Commission, 1956 OK 77 at ¶17.

 

 

Watt, J., with whom Combs, C.J., Edmondson, and Colbert, JJ., join, dissenting:

¶1 I respectfully dissent.

A. History of Article V, Section 33 of the Oklahoma Constitution

¶2 At the time of enactment, Article V, Section 33 of the Oklahoma Constitution required that a revenue bill be introduced in the House of Representatives and forbid passing of revenue bills during the last five days of session. Okla. Const. art. V, § 33 (1907). One year after statehood, this Court considered what it meant to be a revenue bill and determined the appropriate meaning and application, in Oklahoma, in light of the history of revenue bills at common law. Anderson v. Ritterbusch, 1908 OK 250, 98 P. 1002. This Court looked to Judge Story's discussion of the clause from his work on the Constitution, where he noted that the clause regarding revenue bills originally came from the British House of Commons where it applied to all money bills because the House of Commons was presumed to have more ample means of local information and more directly represented the opinions, feelings, and wishes of the people. Id. ¶¶ 6-8, 98 P. at 1005-06. Judge Story noted that this broad application is inapplicable in state Constitutions where both the House and Senate are equal representatives of the people. Id. ¶ 7, 98 P. at 1005-06. This Court noted that "American decisions, both State and federal, have followed Judge Story, and have uniformly refused to hold a bill void because it originated in the Senate, unless the bill levied or imposed a tax in the strict sense of the word." Id. ¶ 11, 98 P. at 1006.

¶3 In 1956, this Court clearly re-stated the 1908 rule from Anderson that (1) "'[r]evenue laws' are those laws only whose principal object is the raising of revenue, and not those under which revenue may incidentally arise," and (2) "'[r]evenue bills' are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue" Leveridge v. Okla. Tax Comm'n, 1956 OK 77, ¶ 8, 294 P.2d 809, 811. Over time, this Court consistently interpreted revenue bill in Article V, Section 33 narrowly in light of the interpretation and rules from Anderson such that it placed minimal restrictions on the Legislature.

¶4 A "substantial departure from precedent can only be justified . . . in light of experience with the rule to be abandoned or in the light of an altered historic environment. Phillips v. Okla. Tax. Comm'n, 1978 OK 34, ¶ 48, 577 P.2d 1278, 1285-86 (internal citations omitted)(emphasis added). And in 1992, the people of the State of Oklahoma altered the historic environment in this State by amending Article V, Section 33 of the Oklahoma Constitution by initiative petition. The "public theme and message of the proponents of this amendment [expressed it as]: 'No New Taxes Without A Vote Of The People.'" Fent v. Fallin (Fent), 2014 OK 105, ¶13, 345 P.3d 1113, 1117. The ballot title for the initiative petition stated:

This measure amends the State Constitution. It adds new provisions to Section 33 of Article 5. These would change the method by which state government makes laws that raise revenue. The measure requires that a bill to raise revenue be voted upon by the people at the next general election. A bill would not be effective until it was approved by a majority of the voters. The measure also provides a way that a revenue bill could become law without a vote of the people. A bill would have to be approved by a 3/4 vote of each house of the legislature and go to the Governor for proper action. A revenue bill approved by a 3/4 vote of each house of the legislature would not become effective until ninety days after the approval date. Such a bill would not be subject to the emergency measure provision.

In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 21,820 P.2d 772, 778-79 (emphasis added). The amended section now provides that revenue bills must originate in the House of Representatives, must be passed by a 3/4 vote of each house of the legislature or must be submitted to a vote of the people, are not subject to the emergency measure provision, and may not be passed within the last five days of session. Okla. Const. art. V, § 33 (2011).

B. Post-1992 Treatment of Revenue Bill under Article V, Section 33

¶5 In 2000, a challenge was brought against a bill that transferred money from fee-generated funds to the special cash fund. Calvey v. Daxon, 2000 OK 17, ¶ 0, 997 P.2d 164. This Court determined that the bill in question was not subject to Article V, Section 33, because it was not a revenue bill. Id. ¶ 18, 997 P.2d at 171. The Court noted that in the initiative petition challenge to amend Section 33, this Court had defined revenue bill, in a footnote, consistently with prior case law. Id. ¶ 11, 997 P.2d at 169 (citing In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 2 fn. 3). The Court declared that amendments are presumed to change judicially interpreted constitutional language. Id. ¶ 13, 997 P.2d at 169. But noted that while the amendment added provisions imposing stricter procedural requirements it did not amend the original language referring to revenue bills in Section 33. Id. ¶ 13, 997 P.2d at 169-70. The Court pointed out that constitutional provisions should be applied to give effect to the intent of the people voting on them; but without considering the intent of the people, stated that the amendment "merely changed the method state government may use to raise revenue" and did not change the meaning of the terms revenue bill or revenue raising. Id. ¶ 14, 997 P.2d at 170.

¶6 In 2014, this Court examined the history of the meaning and interpretation of the terms revenue bill and revenue raising under Article V, Section 33. Fent, 2014 OK 105, ¶¶ 5-15, 345 P.3d at 1115-17. In regard to the amendment to Article V, Section 33 by State Question (SQ) 640, we considered "what would the ordinary person who voted on the 1992 amendment, as explained by its ballot title, understand they were approving regarding the generation of State revenue." Id. ¶ 13, 345 P.3d at 1117 (emphasis added). We also considered the over-riding purpose of the amendment: to "secure tax relief." Id. ¶ 15, 345 P.3d at 1117. We noted that Calvey did not analyze the term revenue bill or consider the 1992 ballot title and what it revealed that voters would understand SQ 640 would do. Fent, 2014 OK 105, ¶ 16, 345 P.3d at 1117. Rather, Calvey simply related that the amendment had not enlarged the definition of revenue bill such that it would include a transfer of money already in possession of the state. Fent, 2014 OK 105, ¶ 16, 345 P.3d at 1117. The Fent Court determined that "[n]othing in the ballot title or text of the provision reveals any intent to bar or restrict the Legislature from amending the existing revenue measures, so long as such statutory amendments do not "raise" or increase the tax burden." Id. ¶ 17, 345 P.3d at 1117-18 (emphasis added). In light of how the 1992 amendment changed the historic environment of Section 33, this Court held the challenged bill, decreasing taxes, was not under the umbrella of Article V, Section 33, as amended. Id. ¶ 18, 345 P.3d at 1118. Further, due to the intent of the voters in SQ 640, Anderson v. Ritterbusch was overruled to the extent it implied revenue bill in Article V, Section 33 includes a decrease in revenue. Id. ¶¶ 17-18, 345 P.3d at 1118.

¶7 Recently, in Naifeh, we determined that a "smoking cessation fee" was a revenue bill subject to Article V, Section 33. Naifeh v. State ex rel. Okla. Tax Comm'n, 2017 OK 63, ¶ 49, __ P.3d __. The majority states that in Naifeh, we "appl[ied] the traditional two-part test." Majority Op. ¶ 18 nn. 37, 40. However, while Naifeh stated the traditional two-part test used to determine if a measure is a revenue bill, it immediately acknowledged that since 1992 we have changed the definition to exclude revenue decreasing bills. Naifeh, 2017 OK 63, ¶ 17, citing Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1117-18. As the only case where this Court has analyzed revenue bills, between Fent and the current case, the Naifeh Court followed Fent and looked at the ballot title of the 1992 amendment and considered the bill under review in light of "whether it [was] the type of measure 'intended to raise revenue' that the people have mandated be enacted only through legislative super-majority or popular vote." Naifeh, 2017 OK 63, ¶ 20. The Court noted that "the people have insisted that legislative measures 'intended to raise revenue'-i.e., those whose primary effect is to reach into the people's pockets to take more money to fund state government- be significantly more difficult to enact than other types of legislation." Id. ¶ 36. The Court then unanimously agreed that "whether a measure is 'intended to raise revenue,' must be the overarching consideration in determining whether a measure is a 'revenue bill.'" Naifeh, 2017 OK 63, ¶ 42 (emphasis added). The fact that Naifeh stated it applied the traditional two-part test, id. ¶¶ 0, 17, does not change the fact that it did not apply the test in the traditional way. Id. ¶¶ 20, 36, 42. Since the bill under review in Naifeh originated in the Senate during the last five days of the legislative session, if SQ 640 did not change the analysis for revenue bills, all analysis and discussion of the amendment and any expectations for tax relief from the changes it enacted would be irrelevant as the bill would have been equally unconstitutional prior to 1992.

¶8 The majority explains that the first part of Article V, Section 33 describes objects, revenue bills, and the second part imposes requirements on those objects. Majority Op. ¶ 19. However, the majority incorrectly relies on Calvey for their conclusion that SQ 640 only changed the second part of Section 33. Id. ¶ 19 n. 38. Due to the unique issues in Calvey, the Court did not perform a full analysis on what the ballot title showed about the meaning of revenue bill. The majority implies that the drafters of SQ 640 were aware of our prior case where we had stated an exemption-removing measure was not a revenue bill and therefore chose to not change the definition of revenue bill to include the removal or repeal of an exemption by not using more explicit language. Majority Op. ¶ 19. However, that is not supported by our holding in Fent. While in Fent we stated that SQ 640 did not change the definition of revenue raising; the majority fails to acknowledge that in Fent, we then considered the intent of the voters of SQ 640 when we held that SQ 640 changed the definition of revenue bill to no longer include bills that create a decrease in revenue. Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1118. Clearly, the fact that the text of the amendment did not specifically change the original language in Section 33 did not prevent a definition change from occurring in light of the intent of the voters. There would not have been the same public concern over SQ 640 without its effect on state government funding, yet the majority's interpretation strips SQ 640 from any real impact as the legislature can now grant and remove any and all exemptions, as they please with only 51% of the vote, making the need for revenue bills as the majority defines them essentially nil in light of the "billions worth" of exemptions that the majority states are currently in our tax code. Furthermore, in both Fent and Naifeh we applied the test to determine if a measure is a revenue bill differently than pre-1992, in light of SQ 640. Fent, 2014 OK 105, ¶ 13, 345 P.3d at 1117, Naifeh, 2017 OK 63, ¶ 42. Since the historic change to this important constitutional provision through the enactment of SQ 640, this Court has clearly recognized that the test now must consider the amendment.

¶9 A constitutional provision must be construed considering its purpose and be given an interpretation that carries out the purpose of the framers and people who adopted it. Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1117-18. "Language employed by the makers of the basic law of the state should not be given a strained or subtle meaning, but such meaning as the average citizen would conclude the language imports." Dixon v. Shaw. 1927 OK 24, ¶ 21, 253 P. 500, 504 (emphasis added). Therefore, the question is what the voters of SQ 640, the average citizens of the State, believed it would do. 

¶10 To determine what the voters understood, we look to the language of the provision and the ballot title. Fent, 2014 OK 105, ¶¶ 10-11, 345 P.3d at 1116. The initiative power should not be crippled, avoided, or denied by technical construction by the courts. In re Initiative Petition No. 360, 1994 OK 97, ¶ 9, 879 P.2d 810, 814. If technical restrictive constructions are placed upon initiative petitions, the purpose and policy of the people "will be entirely defeated, and instead of becoming an effective measure for relief from evils . . .there will be naught but an empty shell and a continuation of the condition for which relief in this manner has been sought." Ruth v. Peshek, 1934 OK 674, ¶ 30, 5 P.2d 108, 112. To hold that SQ 640 did not in any way change the analysis of how we determine if a measure is a revenue bill ignores the rules of construction and defeats the purpose of SQ 640 such that it would be an empty shell.

¶11 In light of the reasoning for this Court's original narrow interpretation of revenue bill and this Court's thorough analysis in Fent and Naifeh regarding the history and purpose of the amendment to Article V, Section 33, it is clear that this Court now considers the intent of the electorate in adopting the 1992 amendment when it determines if a challenged bill is a revenue bill. Naifeh, 2017 OK 63, ¶ 20, Fent, 2014 OK 105, ¶ 10, 345 P.3d at 1116, Oliver v. City of Tulsa, 1982 OK 121, ¶ 31, 654 P.2d 607, 613. Whether a measure is intended to raise revenue is now the overarching consideration in determining whether a measure is a revenue bill, Naifeh, 2017 OK 63, ¶ 42, both because it considers the intent of the people in amending the constitution and because it is also one of the considerations behind whether a measure is a levy of a tax.

C. Analysis of H.B. 2433

¶12 Therefore first, and most importantly, the Court must determine whether the principal object of H.B. 2433 is the raising of revenue or if it is a bill under which revenue incidentally arises. Leveridge, 1956 OK 77, ¶ 8, 294 P.2d at 811; Naifeh, 2017 OK 63, ¶ 42. In evaluating a measure's object or purpose, the Court must look to its actual operation and effect, not simply to what the Legislature says it is accomplishing. Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 21, 373 P.3d 1057, 1068. H.B. 2433 amends several sections of the Oklahoma Statutes to remove part of the exemption from the payment of sales tax for sales of motor vehicles and provides for the collection of the newly required 1.25% sales tax on the purchase of a motor vehicle, such that people purchasing vehicles after the enactment of H.B. 2433 will now pay 1.25% more in taxes on the purchase of a motor vehicle then prior to H.B. 2433's enactment. There is nothing in the bill to give even a purported purpose or object other than to reach into the people's pockets to take more money to fund state government.

¶13 The Court next must determine whether H.B. 2433 levies a tax in the strict sense of the word or is a bill for another purpose which incidentally creates revenue. Anderson, 1908 OK 250, ¶ 11, 98 P. at 1006; Leveridge, 1956 OK 77, ¶ 8, 294 P.2d at 811. Therefore, the object or purpose of the bill remains an important component in our analysis. The majority states that H.B. 2433 does not levy a tax. Majority Op. ¶ 2. Whether an assessment is a tax is determined "according to the mission given it by the law under which it is levied." Red Slipper Club, Inc. v. City of Oklahoma City, 1979 OK 118, ¶ 4, 599 P.2d 406, 408. A key distinction in a tax is that it "is levied primarily for revenue raising purposes." Naifeh, 2017 OK 63, ¶ 43. The newly required 1.25% assessment for sales tax on the purchase of a motor vehicle in H.B. 2433 is clearly a tax as it is primarily for revenue raising purposes and has no alternate mission given to the assessment. However, the majority seems to focus not on whether this is a tax in the strict sense of the word, but rather whether H.B. 2433 contains a levy in the strict sense of the word. Majority Op. ¶¶ 2, 10. This is inconsistent with Naifeh and with the majority opinion's statement in n.41, regarding a distinction "between measures that levy taxes from measures that impose fees", which imply a focus on whether the measure is a tax in the strict sense. Naifeh, 2017 OK 63, ¶¶ 43-49. The two-part test states a revenue bill must be a "levy of a tax in the strict sense of the word." Word is singular, thus the focus must be on either a levy in the strict sense or a tax in the strict sense.[1]

¶14 The question thus becomes, does H.B. 2433 levy that tax? "Strictly speaking, a levy is the legislative act . . . which determines that a tax shall be laid, and fixes its amount . . . . Levying a tax usually means the fixing of the rate at which property is to be taxed" Olson v. Okla. Tax Comm'n, 1947 OK 58, ¶ 11, 180 P.2d 622, 624. The verb levy means "[t]o assess; raise; execute; exact; collect; gather; take up; seize. Thus, to levy (assess, exact, raise, or collect) a tax . . . ." Levy, Black's Law Dictionary (4th ed. 1951). Black's Law Dictionary states that, "[i]n reference to taxation, the word may mean the legislative function and declaration of the subject and rate or amount of taxation . . . . The qualified electors 'levy' a tax when they vote to impose it." Id. The Legislature levied a tax in H.B. 2433 when they voted to exact a new, higher rate at which automobiles will now be taxed and provided the method to collect the raised tax.

 

¶15 The majority argues that the partial removal of the exemption in H.B. 2433 does not levy a tax because the sales tax was "levied in 1933," majority op. ¶ 9, but that is an elevation of form over function. A sales tax is a type of excise tax ("Excise taxes are indirect taxes on activities, occupations, privileges and consumption, such as the sales and use taxes. The term 'excise tax' is a general term used to distinguish it from a property tax." Twin Hills Golf & Country Club, Inc. v. Town of Forest Park, 2005 OK 71, ¶ 12, 123 P.3d 5, 8.). Automobiles have not ever been subject to paying both the state sales tax and the state motor vehicle excise tax. Eighty-four years ago, the State enacted its original 1% sales tax. 1933 Okla. Sess. Laws 456, 459-60. And eighty-two years ago, the State gave a complete exemption to payment of the 1% sales tax coinciding with the first levy of a specific 1% motor vehicle excise tax. 1935 Okla. Sess. Laws 308, 309-10; 1935 Okla. Sess. Laws 328, 328. Clearly, the legislature was not granting a special exemption from a tax so much as it was creating a special distinct category of taxation for vehicles. The rules for statutory interpretation are clear:

A statute which is enacted for the primary purpose of dealing with a particular subject, and which prescribes the terms and conditions of that particular subject matter, prevails over a general statute which does not refer to the particular subject matter, but does contain language which might be broad enough to cover the subject matter if the special statute was not in existence. In summary, when there is a conflict between two statutes, one specific (or special) and one general, the statute enacted for the purpose of dealing with the subject matter controls over the general statute.

Multiple Injury Trust Fund v. Coburn, 2016 OK 120, ¶ 23, 386 P.3d 628, 635-36 (emphasis added).

¶16 Section 1354 "levie[s] upon all sales, not otherwise exempted in the Oklahoma Sales Tax Code, an excise tax of four and one-half percent [on the sales of t]angible personal property" and other specifically enumerated objects. 68 O.S. Supp. 2015, § 1354. Section 1355 provides that the enumerated objects are specifically exempted from the tax levied, pursuant to the provision of Section 1350 et seq. of the title, due to being subject to other taxes. 68 O.S. Supp. 2017, § 1355. Pursuant to H.B. 2433, subsection (2) now states that for sales of motor vehicles subject to the Oklahoma Motor Vehicle Excise Tax levied in Section 2101 et seq., the exemption applies to "all but a portion of the levy provided under Section 1354 of this title, equal to one and twenty-five-hundredths percent (1.25%) of the gross receipts of such sales."68 O.S. Supp. 2017, § 1355.

¶17 The specific statute providing the motor vehicle excise tax is titled the, "Tax for Transfer of Vehicle Ownership. 68 O.S. Supp. 2012, § 2103. As the majority has noted, transfer of vehicle ownership is simply a reference to the sale of a vehicle. This is clearly not a special exemption from the payment of sales tax, as this is a specific statute enacted for the primary purpose of dealing with taxation of the sale of vehicles. Subsection (A)(1) levies an excise tax upon the transfer of ownership of any vehicle registered in this state, and states the excise tax at four and one-half percent (4.5%) for the sales of all-terrain vehicles, utility vehicles, and motorcycles used exclusively off roads and highways and at three and one-fourth percent (3.25%) on the value of a new vehicle, with additional rates for used vehicles and other commercial style vehicles. Id. Thus within Section 2103, prior to H.B. 2433, some vehicles were already taxed at the same rate as tangible personal property under Section 1354, and some vehicles had been designated to be taxed at a lower rate. See id., 68 O.S. Supp. 2015, § 1354.

¶18 Section 2106 states the general rule in subsection (a), "[t]he excise tax levied by this article is in lieu of all other taxes on the transfer or the first registration in this state of vehicles . . ." 68 O.S. Supp. 2017, § 2106 (emphasis added). Subsection (a) continues on to list the exemptions or exceptions from the excise tax being in lieu of other taxes. Id. H.B. 2433 added a new subsection, (a)(4) which now provides exemption for the sale of motor vehicles except to the extent of, "One and twenty-five-hundredths percent (1.25%) of the gross receipts upon which the tax is levied by Section 1354 of this title." Id. This new language in Section 2106 levies a tax in the amount of 1.25% by attempting to subject the specific statutes for taxation of the sales of motor vehicles to the general statute for taxation of tangible personal property. To say that a removal of an exemption from a general statute where there is a specific statute in place, and which requires that citizens of this State pay a tax they have not been subject to for eighty-two years, is not the levy of a tax is a forced and constrained interpretation to reach a result and "is an abject failure to carry out 'the manifest purpose of the framers and the people who adopted [SQ 640].'" Naifeh, 2017 OK 63, ¶ 49, Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1117.

¶19 The majority states:

Our cases have always recognized the important constitutional distinction between measures levying new taxes and measures removing exemptions to already levied taxes. In an unbroken line of decisions dating to near statehood, we have accounted for this distinction through application of a two-part test that limits Article V, Section 33's application to only those measures whose "principal object is the raising of revenue" and which "levy taxes in the strict sense of the word. The first prong isn't seriously in doubt here; the passage of HB 2433 was motivated by a desire to capture additional tax revenue to be used to support state government. But because we have always said that bills must have both features, this case turns on the second prong . . . .

Majority Op. ¶ 8 (bold emphasis added). However, there is no unbroken line of decisions as claimed by the majority accounting for this constitutional distinction between measures levying new taxes and measures removing exemptions. The quote from the majority cites to sixteen cases, leading the reader to believe that all sixteen cases support this "unbroken line of decisions" where we have made that distinction. Id. n. 21. In this long line of cases, only one relied on the exemption for a part of its holding. Leveridge, 1956 OK 77, ¶¶ 0, 13, 294 P.2d at 809, 812.[2] Only one more of the cited cases even mentioned exemptions. Cornelius v. State ex rel Cruce, 1914 OK 222, ¶ 9, 140 P. 1187 (holding that, "[i]t is apparent that this act is not a revenue bill within the contemplation of said section of the Constitution, for the reason that the revenue to be derived therefrom is merely an incident to the main object of the bill, and that its general purpose was not that of raising revenue." Id. ¶ 5.).[3] None of the other fourteen cases cited mention a distinction between measures levying new taxes and measures removing exemptions to already levied taxes. The citations in the footnote are followed by the declaration that:

[t]hese cited cases establish that we have consistently and always applied the traditional two-part test in all Article V, Section 33 cases- a test requiring that a measure 'levy a tax in the strict sense of the word,' which necessarily excludes measures that eliminate exemptions because such measures simply do not levy a tax in the strict sense of the word. We have only decided two Article V, Section 33 cases involving exemptions (both of which held that measures eliminating exemptions are not subject to Article V, Section 33) in over a century of hearing such challenges, which bolsters the conclusion that measures eliminating exemptions have not traditionally been understood as falling within Article 5, Section 33's purview.

Majority Op. ¶ 8 n. 21. However, the cases cited also do not support the contention that we "consistently and always appl[y] the traditional two-part test in all Article V, Section 33 cases." One case relied on by the majority is a one paragraph order with no discussion or citation to any test or cases.[4] Three of the cases discuss the first prong only and do not mention or apply the requirement that the measure levy a tax in the strict sense of the word,[5] Of the other cases cited, this Court has been neither consistent nor unfailing in applying the two-part test.[6] Further, as explained above, measures eliminating exceptions can levy a tax in the strict sense of the word. The fact this Court has only written two opinions regarding revenue bills relating to exemptions in the past one hundred years, only one of which held, that a measure eliminating an exemption was not subject to Article V, Section 33, does not "bolster the conclusion that measures eliminating exemptions have not traditionally been understood as falling within Article 5, Section 33's purview." Instead, it bolsters the conclusion that prior to 1992, we applied the definition of revenue bill extremely narrowly, in light of the history of the provision at common law, and that the People acted in 1992 to change that definition to put restraints on our legislature.

¶20 The majority further states that H.B. 2433 is simply a removal of an exemption from another tax, which Leveridge said is not a revenue bill. Leveridge, 1956 OK 77, ¶ 13, 294 P.2d at 812. However, Leveridge occurred prior to SQ 640 and our altered analysis to determine if a measure is a revenue bill. In Fent, we noted that "[n]othing in the ballot title or text of the provision reveals any intent to bar or restrict the Legislature from amending the existing revenue measures, so long as such statutory amendments do not "raise" or increase the tax burden." Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1117-18 (emphasis added). A removal of a tax exemption serves to increase the tax burden and thus falls under the amended restrictions of Article V, Section 33. It seems clear that the removal of this exemption, results in the payment of a "sales tax"on the purchase of a vehicle for the first time in eighty-two years,[7] and is "intended to raise revenue." It is precisely this type of revenue raising that the people mandated could only be enacted through legislative super-majority, i.e. 75% of the vote, or by popular vote. The primary effect of H.B. 2433 is to reach into the people's pockets to take more money to fund state government and is prohibited under our precedent. Naifeh, 2017 OK 63, ¶¶ 20, 36.The majority ignores this mandate from SQ 640 when they place a technical restrictive interpretation to revenue bill that is contrary to what the average citizen would understand it to mean.

D. Constitutional Policies

¶21 The majority further argues that there are policies deeply rooted in our Constitution disfavoring special exemptions and favoring uniformity in taxation.[8] The majority states that the people who enacted policy disfavoring exemptions in the Constitution would not have intended for the disfavored exemptions to be difficult to remove under the "strict restrictions" of Article V, Section 33. However, prior to SQ 640 in 1992, Section 33 and its restrictions were never strictly applied, so there would not have been a policy conflict as the majority suggests. Prior to the amendment, Section 33 simply required a revenue bill be introduced in the House of Representatives and forbid passing of revenue bills during the last five days of session. Okla. Const. art. V, § 33 (1907). The majority fails to consider the changes over time in how we have addressed revenue bills under Article V, Section 33 of the Oklahoma Constitution, especially those changes to our historic environment from the 1992 Amendment to Section 33 in SQ 640. The intent of the original framers of the Oklahoma Constitution in regard to whether exemptions fall under Section 33 as revenue bills is no longer determinative in light of the intent of the electorate in amending Article V, Section 33 of the Oklahoma Constitution in 1992.

¶22 The majority states that to hold otherwise would create a one-way rachet rule, where the Legislature could hand out exemptions with only 51% of the vote, but would need over 75% of the vote to remove them. Majority Op. ¶ 24. However, this conclusion wholly ignores the intent and will of the people enacting SQ 640 that changed the definition of revenue bill to apply only to legislation that increases, not decreases, revenue. Fent, 2014 OK 105, ¶ 17, 345 P.3d at 1118. The majority's interpretation ignores the will of the people in SQ 640 and their clear desire to place limits on new taxes. Naifeh, 2017 OK 63, ¶¶ 13, 16.

¶23 Although the majority emphasizes the Constitution's preference for uniformity of taxation, this preference is wholly thwarted in application. If we truly honor the Constitutional mandate for uniformity of taxation, we would treat the removal of a tax exemption, resulting in a higher overall tax rate, the same as we treat all revenue bills (and require the same vote, as was required prior to 1992). The majority states, "[t]here are undoubtably some who think a rule making special exemptions difficult to revoke would be a victory for taxpayers. But it wouldn't be; it would be a victory for the status quo." Majority Op. ¶ 24 n. 47. The majority's conclusion distorts this Court's long-standing precedent. The only relevant issue is whether the legislation is within the intended meaning of a revenue bill. If the purpose of the bill is to reach into the people's pockets to take more money to fund state government, then whether it is a removal of an exemption or a new type of tax, it is subject to the rigors of Article V, Section 33 of the Oklahoma Constitution. To ensure "uniformity of taxation" as advocated by the majority, then all revenue bills should be treated the same.

¶24 In trying to create a bright-line rule, the majority creates a rule that is anything but bright. Because the primary purpose and effect of H.B. 2433 is clearly revenue raising and it raises the rate of taxation on motor vehicles by 1.25%, levying a tax in the strict sense of the word not for an incidental purpose, it is a revenue bill under Article V, Section 33 of the Oklahoma Constitution.

[W]here the will of the legislature, declared in its statutes, stands in opposition to that of the people, declared in the Constitution, the judges ought to be governed by the latter rather than the former. . . . [W]henever a particular statute contravenes the Constitution, it will be the duty of the judicial tribunals to adhere to the latter and disregard the former.

The Federalist No. 78, at 466-67 (Alexander Hamilton) (Clinton Rossiter ed., 2003). The majority's holding today ignores the will of the people in amending Article V, Section 33 in 1992 and disregards our duty as the judiciary. I dissent.

FOOTNOTES

[1] I believe the rule refers to a tax in the strict sense of the word, however, for sake of addressing the majority's statements, I will address the question of whether this is a levy in the strict sense of the word.

[2] The bill under consideration does not within its four corners levy a tax and for said reason is not per se a revenue bill.

Moreover, and at most, sections of Title 47 O.S.1951, as amended, contained in H. B. 885, supra, merely declare that certain property (automobiles of the latest manufactured models owned by used car dealers) theretofore exempt from taxation (the motor vehicle excise tax) shall thereafter be subject to taxation. Such amendments do not constitute a revenue bill.

Leveridge, 1956 OK 77, ¶¶ 12, 13, 294 P.2d at 811-12.

[3] In dicta, the Court discussed an 1883 case from Oregon where the act in question required mortgages on real estate be deemed as real property and assessed and taxed in the County they were recorded in; the Oregon court said: "Some of us have considerable doubt whether the bill is not properly a bill for raising revenue, and therefore in violation of section 18 of art. 4 of the state Constitution, because it originated in the senate. But it is not sufficiently clear that a law which merely declares that certain property theretofore exempt from taxation, shall thereafter be subject to taxation, is strictly a law for raising revenue." Cornelius, 1914 OK 222, ¶ 9, 140 P. 1187 (emphasis added).

[4] Ali v. Fallin, 2017 OK 39, __ P.3d __. The full text states: "Original jurisdiction is assumed. Edmondson v. Pearce, 2004 OK 23, ¶ 11, 91 P.3d 605. Senate Bill No. 1604, Laws 2016, c. 341, 1, eff. Nov. 1, 2016, is not a revenue bill subject to the strictures of Okla. Const. Art. V, 33." Id. 

[5] Pure Oil Co. v. Okla. Tax Comm'n, 1936 OK 516, ¶ 10, 66 P.2d 1097, 1100 (Neither stating, citing to, nor even applying the two-part test directly. The sole discussion is limited to:

In Ex parte Tindall, 102 Okl. 192, 229 P. 125, 127, we held that the real purpose of such an act as the instant one is to regulate the use of the highways, instead of raising revenue, and that therefore the section of the Constitution relied upon does not apply. The fifteenth syllabus of that decision is as follows: "The real purpose of the act being to regulate the use of public highways * * * a provision in such act requiring payment of a tax or license fee for the privilege of operating such business, such fee or tax being merely incidental to the enforcement of the real purpose of the act, does not render the act void under section 33, art. 5, of the Constitution, which requires all revenue bills to originate in the House of Representatives."

Id.), In re Lee, 1917 OK 458, ¶ 32, 168 P.53, 57 (Neither stating, nor citing to two-part test. Discussion limited to :

From what has been said in the discussion of the first objection to the statute, it prescribes a fee to the public for services rendered by their officers, and is not exacted for revenue, but as compensation. An act prescribing such fees is not a revenue measure within the meaning of the Constitution. Chapter 248, Sess. Laws 1913, p. 684, imposing a registration tax on mortgages, was held in Cornelius v. State, 40 Okl. 733, 140 Pac. 1187, not to be a revenue measure within the meaning of this section of the Constitution, and was reaffirmed in Trustees, etc., v. Hooton, 157 Pac. 293, L. R. A. 1916E, 602.

Id.), Trustees' Executors' & Sec. Ins. Corp. v. Hooton, 1915 OK 1059, ¶¶ 24-26, 157 P. 293, 298 (Quoting and applying only first part of two-part test, but no mention or application of second part of test.).

[6] Anderson, 1908 OK 250, ¶ 11, 98 P. at 1006 (Creating two-part test), Naifeh, 2017 OK 63, ¶ 17 (Stating two-part test from Anderson and applying it with additional consideration of the intent of the voters of SQ 640), Fent, 2014 OK 105, ¶¶ 6, 10, 345 P.3d at 1115-16 (Stating that the two-part test was not changed by SQ 640, but then re-defining revenue bill in light of SQ 640 such that it no longer includes bills that decrease revenue. Even under the majority's characterization of Fent in fn 40, where they state that Fent "looked to the context surrounding the enactment of the 1992 amendment not to redefine the term 'revenue bill,' but rather to answer a question that had never been posed to this Court," Fent would not be an example of how this Court has "consistently and always applied the traditional two-part test."), Calvey, 2000 OK 17, ¶¶ 10-14, 997 P.2d at 169-70 (Stating that the two-part test was not changed by SQ 640 due to the lack amendatory language to the original Section 33 and this Court's footnote stating the test in the challenge to the initiative petition, without analyzing what the voters understood from the ballot title of SQ 640 that it would do), Fent v. Okla. Capitol Improvement Auth., 1999 OK 64, ¶ 12, 984 P.2d 200, 209 (Quoting the two-part test from Leveridge and finding bills to not be revenue bills due to principal objects of providing adequate and proper facilities, and determination that no tax is levied by appropriation-risk or moral obligation bond measures), In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, ¶ 3 n. 3, 820 P.2d at 774 n.3 (In the challenge to the amendment to Article V, Section 33, in a footnote to "revenue raising bills," stating only the second prong of the two-part test, that "`Revenue Bills' are those that levy taxes in the strict sense of the word and are not bills for other purposes which may incidentally create revenue. Pure Oil Co. v. Oklahoma Tax Commission, 179 Okla. 479, 482, 66 P.2d 1097, 1100 (1936)".), Bd. Of Cty. Comm'rs of Lincoln Cty. v. Okla. Pub. Emps. Ret. Sys., 1965 OK 111, ¶¶ 22-23, 405 P.2d 68, 72-73 (Quoting two-part rule from Leveridge. Holding a retirement act to not be a revenue bill because "[t]he Act levies no taxes and does not contain any provisions for revenue [and] the principal purpose of the Act is to provide a retirement system for public employees and not to raise revenue."), Wallace v. Gassaway, 1931 OK 210, ¶ 18, 298 P. 867, 870, (Stating the two-part test from Anderson and applying only the first prong to hold that a tax resale is not for the purpose of raising revenue, quoting: "The primary object seemed to have been lost to the sight of the courts, that being that the object of tax sales was to support the government by enforcing payment of taxes." Id. ¶ 19.) Ex parte Sales, 1924 OK 668, ¶ 7, 233 P. 186, 187 (Citing to Anderson without stating the two-prong test, and holding based on the first prong: "The act in question is not one for the purpose of raising revenue. It is one for the purpose of regulating a growing effort, on the part of certain enterprises, to appropriate the public highways to their own free use as a "transportation roadbed" for hire and profit, to the inconvenience and detriment of the public. It is true that the act provides for a tax in the nature of a license fee to be paid by operators of such transportation lines, but such fee or tax, if it may be so called, is merely incidental to the attainment of the real purpose of the act, and it is not a revenue law, whose principal object is the raising of revenue, and is therefore not violative of said section 33."), Lusk v. Ryan, 1918 OK 94, ¶ 3, 171 P. 323, 324 (Stating both prongs of the test, but only applying the first prong: "We are of the opinion, and so hold, that section 7 . . . is not a bill for the raising of revenue, but simply provides a procedure to recover illegal taxes paid . . . and therefore said section 7 is in no wise in conflict with section 33, article 5, of the Constitution.").

[7] The majority states that, "HB 2433 revokes part of [the] sales tax exemption so that sales of automobiles are once again subject to the sales tax, but only a 1.25% sales tax. Sales of automobiles remain exempt from the remainder of the sales tax levy." Majority Op. ¶ 5. However, this is misleading as the sales tax was only 1% when the exemption was put in place.1935 Okla. Sess. Laws 308, 309-10; 1935 Okla. Sess. Laws 328, 328. Not only does H.B. 2433 require the people to pay the sales tax for the first time in 82 years, but the newly required tax is 125% of the amount that the people were originally exempted from.

[8] However, the provision on uniform taxes simply requires taxes to be uniform on the same class of subjects. Okla. Const. art. X, § 5(B). The "special exemption," in question here isn't an exemption from paying taxes such that taxes aren't uniform, but rather an exemption from paying a specific tax because of the levy of a different tax that is specially levied only on automobiles. While H.B. 2433 removes only part of the exemption from the payment of sales tax such that the tax on the purchase of an new automobile will now be equal to the tax on other purchases, it creates a 1.25% higher tax on the purchase of all-terrain vehicles, utility vehicles, and motorcycles that will be used off road. The majority's holding would also allow removal of the full exemption without being a revenue bill, which would create a higher tax on new motor vehicles such that the taxes again will not be uniform.

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1914 OK 222, 140 P. 1187, 40 Okla. 733, CORNELIUS v. STATE ex rel. CRUCE
Discussed at Length
 1991 OK 110, 820 P.2d 772, 62 OBJ 3387, Initiative Petition No. 348, State Question No. 640, In re
Discussed at Length
 1947 OK 58, 180 P.2d 622, 198 Okla. 607, OLSON v. OKLAHOMA TAX COMM'N
Discussed at Length
 1915 OK 1059, 157 P. 293, 53 Okla. 530, TRUSTEES' EXECUTORS' & SECS. INS. CORP. v. HOOTON
Discussed at Length
 1994 OK 97, 879 P.2d 810, 65 OBJ 2546, In Re Initiative Petition No. 360, State Question No. 662
Discussed
 1946 OK 217, 172 P.2d 397, 197 Okla. 369, LATTING v. CORDELL
Discussed
 1936 OK 516, 66 P.2d 1097, 179 Okla. 479, PURE OIL CO. v. OKLAHOMA TAX COMM'N
Discussed at Length
 1955 OK 38, 283 P.2d 511, KENDALL v. OKLAHOMA TAX COMMISSION
Discussed
 1956 OK 77, 294 P.2d 809, LEVERIDGE v. OKLAHOMA TAX COMMISSION
Discussed at Length
 1917 OK 458, 168 P. 53, 64 Okla. 310, In re LEE
Discussed at Length
 1918 OK 94, 171 P. 323, 69 Okla. 165, LUSK v. RYAN
Discussed at Length
 1961 OK 224, 365 P.2d 357, JONES v. WINTERS
Discussed
 1908 OK 250, 98 P. 1002, 22 Okla. 761, ANDERSON v. RITTERBUSCH
Discussed at Length
 1965 OK 111, 405 P.2d 68, BOARD OF CO. COM'RS v. OKL. PUB. EMP. RETIRE. SYS.
Discussed at Length
 1934 OK 674, 37 P.2d 964, 169 Okla. 568, In re GRAHAM'S ESTATE
Cited
 1931 OK 210, 298 P. 867, 148 Okla. 265, WALLACE v. GASSAWAY
Discussed at Length
 1931 OK 674, 5 P.2d 108, 153 Okla. 147, RUTH v. PESHEK City Clerk.
Cited
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 2004 OK 48, 98 P.3d 1061, APACHE CORP. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2005 OK 71, 123 P.3d 5, TWIN HILLS GOLF & COUNTRY CLUB, INC. v. TOWN OF FOREST PARK
Discussed
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed
 1929 OK 183, 276 P. 766, 136 Okla. 141, Protest of FIRST NAT. BANK
Discussed
 1924 OK 668, 233 P. 186, 108 Okla. 29, Ex parte SALES
Discussed at Length
 1924 OK 669, 229 P. 125, 102 Okla. 192, Ex parte TINDALL
Discussed
 1925 OK 176, 234 P. 354, 108 Okla. 78, In re ASSESSMENT of BETA THETA PI CORP. for the Year 1923. BETA THETA PI CORP. v. BOARD OF COM'RS OF CLEVELAND COUNTY
Discussed
 2014 OK 105, 345 P.3d 1113, FENT v. FALLIN
Discussed at Length
 1978 OK 34, 577 P.2d 1278, PHILLIPS v. OKLAHOMA TAX COM'N
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed at Length
 2016 OK 120, 386 P.3d 628, MULTIPLE INJURY TRUST FUND v. COBURN; MULTIPLE INJURY TRUST FUND v. STURDIVANT; MULTIPLE INJURY TRUST FUND v. CROSSLIN; MULTIPLE INJURY TRUST FUND v. WILLIAMS
Discussed
 2017 OK 39, ALI v. FALLIN
Discussed
 1979 OK 118, 599 P.2d 406, RED SLIPPER CLUB v. CITY OF OKLAHOMA CITY
Discussed
 2017 OK 63, NAIFEH v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed at Length
 2000 OK 17, 997 P.2d 164, 71 OBJ 721, Calvey v. Daxon
Discussed at Length
 2000 OK 23, 4 P.3d 677, 71 OBJ 929, Oklahoma City Urban Renewal Authority v. Medical Technology & Research Authority of Oklahoma
Discussed
 1927 OK 24, 253 P. 500, 122 Okla. 211, DIXON v. SHAW
Discussed
 1982 OK 121, 654 P.2d 607, Oliver v. City of Tulsa
Discussed
 1949 OK 240, 211 P.2d 790, 202 Okla. 162, COUNTY ASSESSOR v. UNITED BHD. OF CARPENTERS LOCAL NO. 329
Discussed
 1999 OK 64, 984 P.2d 200, 70 OBJ 2100, Fent v. Oklahoma Capitol Improvement Authority
Discussed at Length
Title 37. Intoxicating Liquors
 Cite
Name
Level

 37 O.S. 576, Repealed
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 2103, Tax for Transfer of Vehicle Ownership
Discussed
 68 O.S. 1354, Tax Levy - Rate - Sales Subject to Tax
Discussed at Length
 68 O.S. 1355, Exemptions - Subject to Other Tax
Discussed at Length
 68 O.S. 2106, Excise Tax in Lieu of Other Taxes - Exemptions
Cited